JOHN F. DUSTAN, Respondent, v. ALEXANDER McANDREW and SAMUEL WANN, Respondents.

On failure of the purchaser to perform a contract for the sale of personal property, the vendor, as a general rule, has the election of three remedies: 1. To hold the property for the purchaser, and recover of him the entire purchase-money. 2. To sell it, after notice to the purchaser, as his agent for that purpose, and recover the difference between the contract price and that realized on the sale. 3. To retain it as his own, and recover the difference between the contract price and the market price at the time and place of delivery.

Where the purchaser assigns his interest in the contract to parties who agree to perform it on his part, and, on their failure to perform, himself fulfills and takes the property, he becomes the vendor as to such assignees. The consideration for the assignment added to the amount paid by him to the original vendor forms the contract price, and if he sells the property, after notice, the difference between this sum and the amount realized on such sale is the true measure of his damages.

When the contract, by its terms, provides that the property is to be delivered "subject to the inspection of B., or other mutually satisfactory," neither party has the right to demand inspection by any other person,

---

* See *Conaughty* v. *Nichols* (3 Hand., 83), where allegations in the complaint of a conversion were disregarded. The case of *Austin, Receiver*, v. *Rawdon & Groesbeck* in the Court of Appeals, reported 3 Hand, 155 (overruling same case in Supreme Court, reported 44 Barbour, 435), arose on a motion to set aside a judgment entered upon the report of the referees, referred to in the foregoing opinion.—REP.

unless B. neglects or refuses. The fact that B. is one of the vendors makes no difference.

(Argued September 23, 1870; decided December 28, 1870.)

APPEAL from an order of the General Term of the Superior Court of the city of New York, made upon exceptions therein heard in the first instance, directing judgment for the plaintiff upon a verdict rendered at a trial term of that court.

On the 24th of August, 1860, J. S. & W. Brown, of the city of New York, executed an agreement with the plaintiff to sell him 100,000 pounds of hops, as follows:

"In consideration of the sum of one dollar, the receipt of which is hereby acknowledged, we have sold this day to Mr. John F. Dustan, of this city, 100,000 pounds of first sort western or eastern hops, as we may select; growth of 1860; deliverable in the city of New York, at our option, during the months of October or November, 1860, at seventeen cents per pound, subject to Mr. J. S. Brown's inspection, or other mutually satisfactory. Terms, cash on delivery. Mr. Dustan's name to be made satisfactory either by indorsement or by a deposit of $2,500 by both parties.

J. S. & W. BROWN."

On the 7th of September the plaintiff sold this contract to the defendants, by an instrument of which the following is a copy:

"In consideration of the sum of one dollar, the receipt of which is hereby acknowledged, I have this day sold to McAndrew & Wann the contract of J. S. & W. Brown, dated 24th August, 1860, for 100,000 pounds first sort hops, western or eastern, growth of 1860; upon condition that the said McAndrew & Wann fulfill the conditions of said contract to the said J. S. & W. Brown, and pay to me, in addition, on delivery of the hops, ten and one-half cents per pound.      JOHN F. DUSTAN.

"NEW YORK, September 7, 1860."

On the 28th day of November, J. S. & W. Brown notified the plaintiff by letter, that they would deliver the hops pursuant to contract on the 30th of that month; and plaintiff immediately, on the same day, notified the defendants of that fact, inclosing to them the letter of J. S. & W. Brown; and on the same day the said J. S. & W. Brown wrote a similar letter to the defendants. These notices actually came to the hands of the defendants on the morning of the 30th.

Prior to November 30, John S. Brown had inspected the hops, and put his brand upon them, and certified that they were such hops as the contract called for. On the 30th of November, J. S. & W. Brown were ready and willing to deliver the hops, and the defendants were requested to take them, and they declined on the sole ground, as they claimed, that they had not had an opportunity to examine them and inspect their quality, and because Messrs. Brown had refused to let an inspector, whom they sent, inspect the hops.

On the 24th of December the plaintiff took the hops from Messrs. Brown and paid for them, and on the same day wrote the following letter to defendants:

"NEW YORK, *December 24th*, 1860.

" Messrs. McANDREW & WANN:

· "*Gentlemen.*—The 100,000 pounds hops mentioned in contract of J. S. & W. Brown with me, of 24th August, 1860, and in contract of yourselves with me of 7th September, 1860, are now at the store No. 4 Bridge street, awaiting the fulfillment by you of the terms of your contract, and I hereby tender to you the said hops, and demand from you the payment of the sum of $27,500, the amount of such contract price. Unless you comply with the terms of said contract, on or before the 26th day of December, instant, I will proceed to sell the same on your account and hold you for any deficiency.

"Your obedient servant,

"JOHN F. DUSTAN."

Defendants still declined to take the hops, and then on the 26th day of December plaintiff placed them in the hands

of a hop broker, who sold them for twenty cents per pound, which sale was conceded on the trial by the defendants, to have been fairly made.

This suit was commenced for the breach of the contract on the part of the defendants, in not taking the hops according to contract. It was tried in the Superior Court of New York, before the court and a jury. On the trial the foregoing facts appeared, and the plaintiff also gave evidence tending to show, that on the 30th day of November, and on the 26th day of December, twenty cents per pound was the fair market value of the hops; and the defendants gave evidence tending to show, that on both of these days the market value was some cents higher.

There was also evidence showing that hops had a downward tendency in market all through the month of December. It was shown, also, and not disputed, that the hops in all respects answered the contract.

After the evidence was closed the presiding judge stated, that it was his opinion that there was no question for the jury, and that the plaintiff was entitled to recover the difference between the contract price and the price he obtained on the resale.

The counsel for defendants requested the court to submit the facts to the jury, and to charge the jury in such form as to raise the questions discussed in the following opinion, and to the refusal of the court, defendant's counsel excepted.

The jury, under the direction of the court, rendered a verdict in favor of plaintiff for $8,130. The court directed the exceptions to be heard in the first instance at the General Term; and the General Term having denied a new trial, and ordered judgment for plaintiff, the defendants appealed to this court.

The case below is reported in 10 Bosworth, 130.

*William A. Beach*, for the appellants, cited *Stanton* v. *Small* (3 Sandf., 232); *Jewett* v. *Warren* (12 Mass., 300); *Barnes* v. *Graham* (4 Cow., 452); *McMahan* v. *Erie R. Co.*

(20 N. Y., 463); *Pollen* v. *LeRoy* (30 N. Y., 549, 556); *Duane* v. *Fiedler* (12 N. Y., 40, 48); *Milton* v. *Hudson R. Steamboat Co.* (37 N. Y., 210, 214); *McNaughton* v. *Casally* (4 McLean, 530); 2 Dowl. & Ry., 292; 8 Bar. & Cress., 277; 3 Hill, 141.

*John N. Whiting*, for the respondent, cited *Slingerland* v. *Morse* (8 John., 474); *LaFarge* v. *Rickert* (5 Wend., 187); *Sands* v. *Taylor* (5 John., 395); *Bement* v. *Smith* (15 Wend., 493); *Messmore* v. *N. Y. Shot Co.* (40 N. Y., 422); *Lewis* v. *Grieder* (49 Barb., 606, 638); *Pollen* v. *LeRoy* (30 N. Y., 549); 1 Pars. on Cont., 446; 2 id., 484; Sedgwick on Dam., 282.

EARL, C. The contract required that the hops should be inspected by J. S. Brown, or some other inspector satisfactory to both parties. In case J. S. Brown could not, or should not inspect them for any reason, then they were to be inspected by some other person mutually satisfactory. Neither party had the right to demand any other inspector, unless Brown neglected or refused to inspect. It is doubtless unusual to insert a stipulation in contracts, that the vendor shall inspect the goods sold. But where parties agree to this, they must be bound by their contract, and it must be construed the same as if some other person had been chosen inspector.

It is claimed on the part of the respondent, and was held by the court below, that the inspection provided for was intended simply for the convenience of the vendors, to enable them to perform their contract, and that it merely furnished *prima facie* evidence that the hops answered the contract, and that the inspection was not conclusive upon the parties. I cannot assent to this. The contract was for the sale and purchase of hops of a certain description, and the object of the inspection was to determine for the benefit of both parties, whether they answered that description. Until the vendors delivered the hops with the inspection, the vendee was not obliged to pay, and when so delivered, the vendors

were entitled to the purchase price. The inspection was thus as much for the convenience and benefit of one party as the other. Its purpose, like similar provisions in a variety of contracts, was to prevent dispute and litigation at, and after performance. But if the inspection was merely for the convenience of the vendors, then they could dispense with it, and compel the vendees to take the hops without any inspection whatever. And if it was merely *prima facie* evidence of the quality of the hops, then it was an idle ceremony, because, not being binding, the vendee could still dispute the quality of the hops, refuse to take them, and show, if he could, when sued for not taking them, that they did not answer the requirements of the contract; and thus the plain purpose for which the provision was inserted in the contract would be entirely defeated.

The inspection could be assailed for fraud, or bad faith in making it, and perhaps within the case of *McMahon* v. *The New York & Erie Railroad Co.* (20 N. Y., 463), because made without notice to the vendee. The inspection here was made without notice; but it is not necessary to determine whether this renders it invalid, as no such defence was intimated in the answer or upon the trial.

By the purchase of the contract the defendants were substituted, as to its performance, in the place of the vendee therein named, and were bound to do all that he had agreed to do or was bound in law to do. When notified that the hops were ready for delivery they declined to take them, upon the sole ground that they had not had an opportunity to examine or inspect them; and they claimed that they had sent one Smith to inspect them, and that he had been declined permission to inspect them. There was no proof, however, that they ever tried to examine or inspect the hops, or that the vendors ever refused to permit them to examine or inspect them. They sent Smith to inspect them, and he went to one of the several storehouses where some of the hops were stored, and he says he was there refused an opportunity to inspect them by Mr. A. A. Brown. But there is

no proof that he was in any way connected with the vendor, or that he had any agency or authority whatever from them. There was no proof that defendants ever tried with the vendors to agree upon any other inspector, or that they ever asked the vendors to have the hops inspected by any other inspector, and they made no complaint at any time that they were inspected without notice to them. The point that they should have had notice of the inspection was not taken in the motion for a nonsuit, nor in any of the requests to the court to charge the jury. If the point had been taken in the answer or on the trial, the plaintiff might, perhaps, have shown that notice was given by the vendors, or that it was waived.

Hence we must hold, upon the case as presented to us, that there was no default on the part of the plaintiff or the vendors, and that the defendants were in default in not taking and paying for the hops. The only other question to be considered is, whether the court erred in the rule of damages adopted in ordering the verdict.

The court decided that the plaintiff was entitled to recover the difference between the contract price and the price obtained by the plaintiff upon the resale of the hops, and refused, upon the request of the defendants, to submit to the jury the question as to the market value of the hops on or about the 30th day of November.

The vendor of personal property in a suit against the vendee for not taking and paying for the property, has the choice ordinarily of either one of three methods to indemnify himself. (1.) He may store or retain the property for the vendee, and sue him for the entire purchase price. (2.) He may sell the property, acting as the agent for this purpose of the vendee, and recover the difference between the contract price and the price obtained on such resale; or (3.) He may keep the property as his own, and recover the difference between the market price at the time and place of delivery, and the contract price. (2 Parsons on Con., 484; Sedgwick on Dams., 282; *Lewis* v. *Greider*, 49 Barb., 606; *Pollen* v.

*LeRoy,* 30 N. Y., 549.) In this case the plaintiff chose and the court applied the second rule above mentioned. In such case, the vendor is treated as the agent of the vendee to make the sale, and all that is required of him is, that he should act with reasonable care and diligence, and in good faith. He should make the sale without unnecessary delay, but he must be the judge as to the time and place of sale, provided he act in good faith and with reasonable care and diligence. Here it is conceded that the sale was fairly made; it was made in the city of New York, in less than one month from the time the defendants refused to take the hops. It was not claimed on the trial that the delay was unreasonable and we can find nothing in the case to authorize us to hold that it was unjustifiable. We are, therefore, of the opinion, that the court did not err as to the rule of damages.

The judgment should therefore be affirmed with costs.

For affirmance, Lott, Ch. C., Earl and Hunt, CC. Gray, C., was for reversal, on the ground that the delay in selling was too great.

Leonard, C., did not vote.

Judgment affirmed with costs.