CLEMENT & HAWKES MANUFACTURING COMPANY *vs.* PETER S. MESEROLE.

A dealer ordered two hundred dozen hoes to be manufactured, and delivered to him within a certain time; and the manufacturer accepted the order, with the remark that he would endeavor to fulfil it promptly. The price per dozen was stipulated in the contract; but not the time of payment. A month after the time set for the completion of the delivery, the manufacturer, having then delivered only a hundred and ten dozen, drew on the dealer for part of the price of that quantity. The dealer refused to accept the draft, and directed the manufacturer to send him no more hoes; and then, in an action brought by the manufacturer for the price of those delivered and received, sought to recoup in damages for the delay in fulfilling the order. *Held*, that the manufacturer had a right to regard the direction to send no more hoes as a rescission of the contract as to the ninety dozen undelivered; and that the dealer had no ground of exception to a ruling that the measure of his damages, as to the hundred and ten dozen, was whatever decline in their market value occurred between the time when he was entitled to their delivery and the time when they were actually delivered to him.

CONTRACT, brought on August 4, 1869, for the price of goods sold and delivered by the plaintiffs to the defendant, who sought to recoup in damages for the plaintiffs' failure to deliver the goods within a time specified in his order for them. At the trial in the superior court, before *Rockwell*, J., the jury returned a verdict for the plaintiffs; and the defendant alleged exceptions. The case is stated in the opinion.

*G. M. Stearns & M. P. Knowlton*, for the defendant.

*C. Delano*, (*J. C. Hammond* with him,) for the plaintiffs.

AMES, J. The correspondence of the parties shows that the defendant was desirous to have the exclusive agency for the sale

of the plaintiffs' weeding-hoes in the states west of Michigan and Ohio. In their reply to his proposition, they say that they are willing to arrange with him upon some such plan, and if he would "make an order of sufficient magnitude to warrant," they would not "canvass in the territory mentioned," but would leave it entirely for him to occupy. He then sends an order for two hundred dozen, of specified sizes and prices, one half to be shipped on or about March 15, 1869, and the remainder on or about April 15. They reply, saying that they will endeavor to furnish the hoes promptly at the times specified. There was therefore an executory contract of sale as to two hundred dozen, which it was understood that the plaintiffs were to manufacture and send forward; but although this contract provides for the price per dozen, and the time of delivery, it contains no stipulation whatever as to the time when payment should be made by the defendant.

We find nothing in the evidence that has any tendency to show that the plaintiffs have broken their engagement not to canvass in the territory which they had agreed to leave for him to occupy. It does not appear that they have established any other agency, or made any other sales, in that region ; or have directly or indirectly interfered with the exclusive agency for which he had stipulated. It was no part of their contract that other purchasers in other markets should not send their goods wherever they chose.

The plaintiffs proceeded, in pursuance of the above order, to manufacture the goods, and to forward them to the defendant at various dates from April 5 till May 22, until one hundred and ten dozen in all had been delivered, the delay having been a matter of frequent complaint on one side and explanation on the other. At this stage of the case, the plaintiffs drew an order upon him for a part of the price, which he refused to accept, insisting that he expected and was entitled to a longer credit, and at the same time directing them to send him no more of the goods. It appears to us, that, upon this refusal of payment, and this countermand as to the remaining ninety dozen, the plaintiffs were justified in considering the unexecuted portion of the contract of sale as rescinded. No time of payment having been agreed upon

in the original contract, they at least had a right to call for payment in a reasonable time, and were under no obligation to give credit indefinitely. The defendant therefore has no ground of complaint as to the ninety dozen so countermanded.

With regard to the one hundred and ten dozen which he received, as the original order allowed some latitude as to the time of shipment, and as the plaintiffs' reply to the order was that they would endeavor to furnish the goods promptly at the time specified, it was properly left to the jury to say whether there had been substantially a compliance with the contract. As we understand the instructions, the jury were told that, if the defendant had sustained any damage by delay in the shipments, he would be entitled to an allowance accordingly, but that the measure of damages to be allowed would be such decline in the market value of the goods as might have occurred between the time at which he was entitled to receive them and the time at which they actually were received. We do not think that in such instructions the defendant has any ground of complaint. See *Cutting* v. *Grand Trunk Railway Co.* 13 Allen, 381, and cases there cited. Neither do we find in any of the rulings any sufficient reason for disturbing the verdict. *Exceptions overruled.*