# CHARLESTON

ACME FOOD COMPANY *v.* OLDER.

64    255
66    314

Submitted March 17, 1908.    Decided March 31, 1908.

1.  BILLS AND NOTES—*Pleading—Sufficiency—Promise.*

   The clause "whereby he promised and agreed, for a valuable consideration   *   *   to pay" &c., in a declaration in *assumpsit* on a promissory note, is a sufficient averment of a promise, and is not merely descriptive of the note. It is affirmative and narrative as well as descriptive and yet not violative of the rule against duplicity. (p. 256.)

2.  SALES—*Action for Price—Nature and Form.*

   . To sustain an action for the purchase price of goods completely sold so as to pass the title, but not delivered, a common *indebitatus* count for goods bargained and sold is appropriate. (p. 261.)

3.  SAME.

   Neither an action for goods bargained and sold nor for goods sold and delivered will lie, if the title to the property has not passed to the vendee. (p. 257.)

4.  SAME—*Remedies of Vendor—Measure of Damages.*

   If an executory contract of sale has been broken by the vendee before the title had passed, the measure of damages, in an action, by the vendor, is the difference between the contract price and the value of the property. (p. 260.)

5.  PAYMENT—*By Note.*

   In the absence of an agreement to the contrary, a promissory note, given for the purchase money of property, is not payment thereof; but the contract constitutes a valuable consideration for the note and an action may be maintained thereon, even though the property was never delivered and the title thereto never passed. (p. 275.)

6.  BILLS AND NOTES—*Defenses—Failure of Consideration.*

   In an action between the maker and payee, on a negotiable note based upon such consideration, after maturity, the defendant may defeat or limit the amount of the recovery thereon, by proving, in the one case, a total unexcused non-performance, on the part of the vendor, of his contract to deliver the property or loss, on the part of the vendee, of the benefit of the contract, occasioned by want of title in the vendor, and, in the other, refusal of the vendee to accept the property and notice of his intention not to do so, given before the title passed; all on the theory of failure of consideration in whole or in part. (p. 275.)

7. SALES—*Remedies of Vendor—Measure of Damages.*

In the latter case, the recovery is limited to the difference between the contract price and the value of the property at the time and place at whice it was, when the contract was broken.    (p. 264.)

8. CONTRACTS—*Validity of Assent—Fraud—Failure to Read.*

A man is not permitted to defeat or be relieved from the obligation of a written contract, merely by showing he signed it without having read it and in ignorance of its contents; but he is at liberty to show that, by the artifice, deception and fraud of the other party or his agent, he was induced to sign it without having read it, and upon the assurance, and under the belief, so superinduced by the other party, that it was a paper wholly different in character from the one signed.    (p. 277.)

Error to Circuit Court, Putnam County.

Action by the Acme Food Company against J. B. Older. Judgment for plaintiff, and defendant brings error.

*Reversed.    Remanded.*

JEROME DUDDING and S. S. GREEN, for plaintiff in error.

LEO LOEB and ANDREW S. ALEXANDER, for defendant in error.

POFFENBARGER, PRESIDENT:

The Acme Food Company obtained a judgment against J. B. Older, in the circuit court of Putnam county, for $425.45, the amount of a verdict rendered by a jury by direction of the court, and of this judgment Older complains, assigning a number of errors.

The court overruled his demurrer to the declaration and each count thereof. The sufficiency in law of the common counts is admitted, but there is a special count on a promissory note which the attorneys for the plaintiff in error say was clearly bad. It alleges that the defendant "made, executed and delivered to the plaintiff a certain promissory note * * * whereby he promised and agreed, for value received, as acknowledged and set out on the face of said note, to pay to plaintiff" &c., and then avers non-payment thereof after the day when the same became due. Upon the authority of *Cooke* v. *Simms*, 2 Call. 35, *Woody* v. *Flournoy*, 6 Munf. 506, and *Burton* v. *Hansford*, 10 W. Va. 470, it is charged that this count does not allege a promise or undertaking to pay the amount named in the note. The clause

"whereby he promised and agreed" is said to be merely descriptive of the note. If it amounted to no more than a participial phrase, using the word "promising," as in the fourth count of the declaration in the case of *Cooke* v. *Simms*, it would be insufficient, nor is there any other clause or phrase in the count that would supply the omission. After the common counts in the preceding part of the declaration a promise in consideration of the indebtedness stated in the common counts is averred, but, neither in the special count nor after it, is there such an averment, unless the phrase above quoted is such. In the clause assigning breaches of the undertaking, there is a recital in which reference is made to the promises and undertakings set out in the several counts, but no averment of a promise. However, we think the language above quoted from the declaration is sufficient. The word "whereby" is grammatically and logically equivalent to the words "and by it," so that it has the same effect as if the pleader had said the defendant had made his note and by it promised and agreed to pay, &c. It is undoubtedly descriptive of the note, but it is also affirmative and narrative of the legal effect thereof, or rather of the act of the defendant in making the note. It clearly performs a double function, and yet it does not subject the count to the rule against duplicity, for the descriptive effect is subsidiary, and included in, the statement or narration respecting the act of the defendant. The descriptive function is really a necessary one. It specifies the means by which the promise was made.

Two of the common counts are for goods bargained and sold, not sold and delivered, and there is rather a query as to whether there can be a common *indebitatus* count for goods sold but not delivered. Chitty's Pleading, 11th Am. Ed. 340, says: "In general the consideration must have been executed, not executory." Vol. II of the same work, at page 57, prescribes a form of common count for goods bargained and sold. Lord Eldon indicated the distinction between the two forms of declaring in *Ex Parte McGae*, 19 Ves. 607, 609. There may be an executed contract, passing title, without delivery of possession, as in the case of retention of a seller's lien. There, a count for goods sold and delivered could not be maintained, but one for goods bargained and sold could be, for the contract is complete and the

seller entitled to recover the price, although the goods have not been delivered. It is an executed contract. *Buskirk Bros.* v. *Peck*, 57 W. Va. 360. See also *Simmons* v. *Swift*, 5 B. & C. 857; *Rhode* v. *Thwaite*, 6 B. & C. 388; *Atkinson* v. *Bell*, 8 B. & C. 277.

Most of the other errors assigned involve consideration of the evidence, and the attorneys for the defendant in error strenuously insist that it is neither incorporated into, nor identified by, the bills of exception. Bill of exception No. 1, taken for the purpose of making the evidence a part of the record, is a skeleton bill. In this, under the heading, "Plaintiff's Evidence," there are six numbered paragraphs, purporting to identify the documentary and oral evidence introduced by the plaintiff. The first clause calls for "Exhibit J. B. O. Ex.—1," describing it as a paper writing called "Order Blank and Note" and marked as aforesaid, and directs insertion thereof. No paper so marked is found in the record, but a paper called an order blank and note by the attorney in the examination of the witness for the plaintiff, but which is, in fact, an order and a note, the note sued on, is found, and a witness for the plaintiff says it is marked "J. B. O. Ex. 1." The second calls for a paper writing marked "G. S. Ex. A," with the evidence of George H. Simpson and directs insertion thereof. A paper is found marked as indicated and the testimony of Simpson refers to it. The third calls for a paper writing marked "Ex. Z," with the evidence of George H. Simpson and a paper so marked is found in the record. The fourth calls for a paper writing called "Ex. E," letter of J. B. Older, Aug. 20th, addressed to Acme Food Co. Just such a letter, so marked, is found. No. 5 directs the insertion of the deposition of J. W. Calland with the exhibits filed therewith and such a deposition is found in the certificate of the stenographer. No. 6 directs the insertion of the testimony of J. B. Older and George H. Simpson, taken by the stenographer in shorthand and written out in long hand by her, and her certificate shows such testimony. Under the heading, "Defendant's Evidence," similar directions are given and all the papers and evidence directed to be inserted are found in the certificate of Ethel L. Vicroy, Stenographer. She is named in the bill of exceptions as the stenographer. The indentification of the

documents and testimony is clear and complete.    There is not
the slightest uncertainty as to anything.    They were not, in
fact, inserted in the bill.    The clerk certifies the skeleton
bill, and, along with it, the stenographer's certificate, in which
the oral testimony is all set out, accompanied by the exhibits,
means for identifying which are found in the descriptions
given by the witnesses and the marks found on the papers
themselves, corresponding to the "ear-marks," given in the
skeleton bill.    Though not physically incorporated in the bill
of exceptions, they are clearly in it and a part of it in a legal
sense.

The defendant plead *non-assumpsit* and filed two special
pleas.    By the first special plea he averred fraud in the pro-
curement of the note, and, by the second, denied execution
thereof.    The material facts shown by the evidence are as
follows:    The plaintiff was a manufacturer and dealer in
poultry and animal food at Chicago, Illinois.    On the 8th day
of August, 1904, their salesman, J. W. Calland, obtained
from Older, at the city of Charleston, his written order on
a printed form for their products, amounting to $402.50.    At
the bottom of the order, and above his signature, there was
the following memorandum and note:

"To be shipped Sept. 1st.    4 per cent discount if paid by
Aug. 23.    120 days after date, for value received, I, we, or
either of us, promise to pay to Acme Food Co., or order,
Four Hundred and Two ..... ...........50-100 Dollars, at
Acme Food Co.'s office, Chicago, Ill., with ·interest after
maturity until paid."

Below the note there was a printed guarantee of the goods
sold by the plaintiff.    At the same time, Calland gave to
Older a paper called "Shipping Directions," at the heading
of which there was written or printed this direction:    "These
shipping instructions must be filled out complete and attached
to all orders and notes."    It was directed to the Acme Food
Co. and contained blanks for the name of the consignee, his
address and sizes of packages of the different kinds of food
with blanks for numbers of packages and prices.    Calland
filled in Older's name and his address and inserted some of
the quantities to be shipped, and then wrote below the order
the following:    "Terms 90 days.    An extension of time will
be given until sold."    Calland admits the execution and de-

livery of this paper, but says it was delivered after the order and note were signed by Older. Older says it was delivered at the same time and was part of the same transaction. Older further says he did not read the order and note, but that Calland read to him all of it except the note, and that he, under the belief that it had been truly read to him, signed it, under the impression that it was merely an order for goods. On the other hand, Calland says Older read it himself before he signed it. On the 16th day of August, 1904, the plaintiff wrote the defendant the following letter:

"August 16, '04. J. B. Older, Esq., Confidence, W. Va. Dear Sir:—We are in receipt of your order of August 8th, for one case of ACME POULTRY FOOD, 100 lbs. in 10 lb. pails, and 6000 lbs. of ACME FOOD, which you request us to ship to *Reed* House, West Virginia, under date of Sept. 1st. Wish to advise we have manufactured, marked and set aside these goods in our warehouse, and the same will be shipped you on the date specified, and we have accepted of your note bearing date of Aug. 8, '04, for the amount of $402.50, due 120 days after date. Thanking you for the order, and with kind regards, we are, Yours Very truly, Acme Food Company."

On the 20th of August, Older replied as follows:

"Confidence, W. Va., Aug. 20, 1904. Acme Food Co., Chicago, Ill. Dear Sir:—I have reconsidered the matter in regard to the amt. of stock food to be shipped to me. I think (1000) one thousand pounds will be all that I can handle at first. I live 7 miles from the R. R. and have no storage room and cannot get any. Also I think that is too large a quantity to be be disposed of in this locality. That is the packages are too large to introduce this' food at first to each individual. If you wish you can send me one thousand pounds on the same terms as the agreement with agent. If you prefer not to send this amount you need not send any, as I do not deem it prudent to send me as much as 3 tons for I do not believe that I can dispose of that amt. this fall. J. B. Older.

On the 26th of August, 1904, the goods were shipped, and, with the bill of lading, the consignor enclosed the following printed notice:

"We desire to call your attention to the liberal discount which is offered for cash, and we know that you will find it to your advantage to avail yourself of this discount as it will, in the majority of cases, equal the freight. In other words, it is equal to an annual interest of from 10 to 15 per cent.

"In extending this credit, unusual time has been given, and this credit has been granted with the understanding that the obligation will be met promptly at maturity. Therefore, NO EXTENSION will be granted, but on the other hand, the amount is to be met upon the date specified. Please DO NOT write for extension, but if you are unable to avail yourself of the cash discount, arrange your business whereby this bill shall be paid upon maturity." After the receipt of this, Older wrote the following letters:

"Winfield, Putnam Co., West Va., Sept. 8, 1904. Acme Food Co., Chicago, Ill. Gentlemen: Your letter of Aug. 16th informing me of the receipt of my order of Poultry Food was received. I replied to that letter telling you not to send so much, and to not send over a 1000 lbs. You now send me 6000 lbs. I positively refuse to accept the goods, as you have utterly failed to comply with your contract with me, as made by your agent J. W. Calland. *The Agent agreed that goods were not to be paid for until sold.* Very truly, J. B. Older, (Pr. Dudding.)"

"Winfield, Putnam Co., W. Va., Sept. 19, 1904. Acme Food Co., Chicago, Ill. Gentlemen: I have your letter of the 15th, inst., relating to 'Acme Food.' I am willing to comply with my contract with your salesman, J. W. Calland, which contract was the goods should be paid for when sold, and he to assist me in selling, that is he, Calland, to come here to the county travel with me and appoint agents to sell the stuff, I to do the collecting. As soon as this is done, or your Company makes this part of the agreement good, I will receive the goods; but not otherwise. Very truly yours, J. B. Older. pr. Dudding."

The inquiry as to whether, in this state of the case, the court could properly direct a verdict for the plaintiff, renders necessary the ascertainment of certain legal principles, relating to the remedies and measure of relief for breach of a contract of sale of personal property. The trial court must have assumed either that the note sued on was a contract,

separate and distinct in all respects from that of the sale of the goods, or that the order for the goods, accepted by the seller, constituted a contract of sale under which the title to the goods passed, or that the contract was executory and, though title did not then pass, the tender of delivery entitled the seller to the same remedy and relief as if the contract had been an executed one. If the first of these assumptions is correct, the special plea No. 2, denying under oath the making, execution and delivery of the note raised a vital issue which should have gone to the jury, as will be more clearly indicated in a subsequent portion of this opinion. But, if the other assumptions be true, this would make no practical difference, for the ordering of the goods is not denied. On the contrary, it is admitted. Although the note may not have been executed, the plaintiff would be entitled to a verdict for the purchase price of the goods, which amounts to the same thing, and the error in directing the verdict was harmless. Hence, the necessity of determining whether the sale was executory or executed, and, if executory, whether the subsequent tender of the goods made by the plaintiff gave it the right to sue for and recover the purchase price, or only damages for the breach of the contract on the part of the buyer in revoking the order before delivery and refusing to accept the goods, on the assumption that the jury may find he did countermand it.

It is important also to observe and remember that an executory contract, under which the title does not pass until the seller has done certain things, by way of preparation of the subject matter of the contract for delivery, or the identification thereof, or the performance of a condition precedent, such as putting it on board the cars for shipment or depositing it in a specified place from which the purchaser is to take it, may become executed by the performance of all these things before the purchaser has dissented from or renounced or repudiated his contract, or given notice that he will not accept. In cases of this kind, the measure of relief ought to be, and is, the same as in the case of an executed contract of sale. This conclusion is reconcilable to legal principles. By the executory contract of purchase, the buyer agrees to take the property. By this agreement, he makes himself liable in damages in the event he fails to perform. From this liabil-

ity, he cannot escape by refusing to accept the property when tendered. Moreover, he has, for a valuable consideration, made a standing offer to accept, which is binding upon him. This offer he cannot rightfully withdraw, but, unlike a contract for the lease or sale of real estate, it is incapable of compulsory specific performance. Therefore, if, before the purchaser under an executory contract of sale repudiates it or gives notice of his intention not to accept, the seller performs all the antecedent things stipulated to be done on his part, he thereby accepts and takes advantage of the standing offer of acceptance made by the purchaser and completely closes the executory contract and makes it an executed one, passing the title into the purchaser. Then he may clearly sue for the purchase price. The property has become that of the purchaser who owes the seller the purchase money, a debt pure and simple, the amount whereof is fixed by the contract, and is not merely liable for damages for the breach of a contract. In such case, it is not an action for damages for refusing to accept the goods. The title has been accepted, whether the goods are actually in the buyer's possession or not. On the performance of all those things which the contract imposed upon the seller, in the absence of any dissent on the part of the buyer, the title passes by the mutual consent of both parties, and so every technical requirement of the law of contracts is complied with.

The authorities all agree that the purchase price of goods sold may be recovered, if the contract has been executed. As to the measure of damages, when the contract is executory and the buyer has refused to accept the goods, there seems to be a conflict of authority. One question, then, to be determined, is whether the contract was executory, and, if so, and there has been a refusal to accept, whether the measure of damages is the purchase price or only damages for the breach of the agreement to accept. Actual delivery to the vendee is not always necessary to the passing of title. Whether the title has passed depends upon the intention of the parties, to be ascertained from the terms of the contract, when they are clear and unambiguous, and from the terms and admissible extraneous evidence, when they are not so. *Buskirk Bros.* v. *Peck*, 57 W. Va. 360; *Morgan* v. *King*, 28 W. Va. 1; *Hood* v. *Block*, 29 W. Va. 244; *Haxall* v. *Willis*, 15

Grat. 434. It is not necessary to refer to the many illustrations to be found in the books, showing under what circumstances title may pass without delivery or payment of the purchase money, or the rules for determining whether it does or not. It suffices to direct attention to the importance of remembering that title does not often pass under such circumstances, and that, whether, under the evidence in any given case, it has passed, is sometimes a question for the jury. Perhaps, by reason of the clearness and certainty of the terms of the written or verbal contract, or the conclusion deducible from the uncontroverted facts, it is more frequently a question for the court. When the contract, at its inception, is executory, it is necessary to bear in mind the requisite of performance of the conditions precedent, in determining the measure of damages or the amount of the recovery, it being dependent upon the vesting of title in the buyer.

It is sometimes said that the vendor in an executory contract of sale has, on the refusal of the vendee to accept the property, an election as to whether he will treat it as his own and sue for damages for the breach, or treat it as that of the purchaser and sue for the price, and that, in the latter case, he may sell the property and recover the difference between the contract price and the price obtained on such sale, or store it for the vendee and recover the whole purchase price. Sedgwick on Damages, sec. 753; Benjamin on Sales, p. 794, note 3; Tiedeman on Sales, sec. 333; 24 Am. & Eng. Ency. Law 1118. In the first three of these authorities it is said this is the prevailing American rule. The last work cited indicates that it is not. It states the general rule as follows: "Where the title has not passed and the contract is still executory, it is usually held that the remedy by an action for damages is exclusive, and that an action for the agreed price cannot be maintained." Sutherland on Damages (3 Ed.), Vol. 3, sec. 644, says: "To entitle the seller to recover the full value—either the contract or the market price—the sale must be executed so as to pass the title to the purchaser; the property must be at his risk, and he thus qualified to bring trover for it. Then, and not till then, an action either for goods sold and delivered, or bargained and sold, may be maintained; the former if there has been delivery, and the latter if there has not. The sale of a specific chattel passes

the property in it to the vendee without delivery, and the
risk of property which is the subject of a sale attends the
title.   But where the sale is of goods generally, no property
in them passes until there is a subsequent appropriation ac-
cording to the contract of the goods to which it applies.
Where by the contract itself the vendor appropriates to the
vendee a specific chattel, and the latter therby agrees to take
that chattel and to pay the stipulated price, the parties are
then in the same situation as they would be after a delivery
of goods in pursuance of a general contract.   The very ap-
propriation is equivalent to delivery by the vendor, and the
assent of the vendee to take the specific chattel and pay the
price is equivalent to his accepting possession.   The effect of
the contract, therefore, is to vest the property in the bar-
gainee.   * * * *   Several cases in New York seem to
affirm the right of a vendor to tender goods on an executory
contract of sale and sue for the price, though the agreement
did not give him the right of selecting and appropriating the
particular goods to it.   When articles are ordered to be man-
ufactured they are treated as the property of the vendee when
made, and notice thereof given to him with request to take
them away.   The vendor has then an immediate right of ac-
tion for the price.''

The classification of the cases, made by the text-writers, is,
in some instances, inaccurate.   The writers seem not to have
observed in all instances the distinctions and tests above men-
tioned.   In other words, they have frequently classed cases
in which the title had passed or in which there was evidence
from which the jury might have found the fact, as cases in
which it had not passed.   In other instances, they have failed
to observe that the executory contract had become executed
so as to pass the title before any renunciation was made by
the vendee.   Indeed, there are very few cases in which the
seller has been allowed to recover the purchase price when
the title to the property had not passed to the buyer.   The
doctrine of election, when the title has not passed, seems to
have grown out of an unfortunate and inaccurate interpre-
tation of certain cases made by Mr. Sedgwick in his work on
Damages.   He having stated the proposition a good many
years ago, certain courts cited his work as authority for it,
and, later, the editors of that work, have cited these cases to

sustain it. His text may have been misinterpreted. Thus, *Dustan* v. *McAndrew*, 44 N. Y. 72, cites Sedgwick on Damages. Then in the Eighth Edition of Sedgwick, *Dustan* v. *McAndrew* is the first case cited. On examination, *Dustan* v. *McAndrew* will be found to have been a fully executed contract. The hops had been delivered at the place of delivery specified in the contract before there was any dissent on the part of the purchaser. It may also have been an executed contract passing the title at its inception. At any rate, it is not a case in which the title had not passed. An older edition of Sedgwick, the Fifth, cited *Graham* v. *Jackson*, 14 East 498, *Bement* v. *Smith*, 15 Wend. 493, and *Thompson* v. *Alger*, 12 Metc. (Mass.) 428, to sustain his proposition. In *Graham* v. *Jackson*, the case of a sale by a bought and sold note, made by a broker in New York, it appeared that the defendant had bought of the plaintiff 300 tons of Campeachy logwood, which the memorandum described as "shipped at New York * * * to be of real merchantable quality. Such as may be determined to be otherwise by impartial judges to be rejected." Before any objection was made by the purchaser the logwood arrived in England. Supposing it not to have been an executed contract at its inception, passing the title, it had been·executed when the action was brought. It had been delivered at the place stipulated. Upon delivery, it became the property of the purchaser, he having given no notice of intention not to receive it. It is not clear that it was an executory contract. If the broker and the seller agreed at the time upon the specific wood loaded on a ship then at New York, ready to be carried to Liverpool, the seller having nothing more to do with it, then, under all the authorities, it was an executed contract of sale, passing title. *Bement* v. *Smith* was an action brought by the manufacturer of a carriage, made to the order of the defendant for an agreed price. There was no dissent on the part of the defendant until after the sulky had been made and delivered. Therefore, if it were an executory contract in the first instance, it had become executed before the purchaser withdrew his offer to accept. But it was a contract for the manufacture of an article, made to the order of the buyer, and was analogous to that of a contract of a sculptor to make a statue, or a painter to make a picture or a tailor to make a

suit of clothes, in all which cases the article, when done, appears to have been intended to be the property of the person for whom it was made. It is not a contract for the manufacture of an article for sale on the market. In a practical sense, it is an agreement on the part of the manufacturer to use his material and bestow his labor and skill in the fabrication of an article for another person. As the passing of title is a question of intention, to be ascertained from the facts and circumstances, in the absence of an express stipulation as to when it shall pass, and it appears that the article so specially made was intended for no person other than him who ordered it, not the manufacturer for his own use or for sale in the market generally, it seems clear that the intention was that the article should become that of the former on the completion thereof. Cases of this kind are regarded as exceptions to the general rule, respecting the vesting of title. That of *Bement* v. *Smith* was expressly declared in the opinion to be analogous to a contract by a taylor to make a garment, or a shoemaker to make a pair of shoes. Another case of the same kind is that of *Vallentine* v. *Robinson*, 46 Pa. St. 177, in which the price of an engine made to a special order was the matter in controversy. The court said: "The present is not strictly a case of a sale. The plaintiffs agreed to build the engine according to directions of the defendants and to furnish the necessary materials for it. When it was completed the defendants had notice, and were bound to take it away and pay the contract price; but instead of taking it and paying the price, they requested the plaintiffs to sell it. In such a case the right of property was clearly in them on notice of the completion of the article." In view of this language, the case is certainly not one that can be cited in support of the proposition that the seller may sue for the price when the title has not passed. The court expressly found and declared that it had passed. Another case of the same kind is *Shawhan* v. *Van Nest*, 25 O. St. 490, in which the subject matter of the controversy was the purchase price of a carriage constructed for the defendant, in accordance with his order and direction. The court followed *Bement* v. *Smith.* In the opinion the Sedgwick rule was discussed, as well as its approval in Swan's Treatise, but the court refrained from committing itself to it, saying: "We sanction and apply the

rule in the determination of the particular case before us."
It did not determine whether the title had passed or not.
It could not have applied the principle of *Bement* v. *Smith*
and *Vallentine* v. *Robinson* as it did without finding that the
title had passed. *Chicago* v. *Greer*, 9 Wall. 726, is classed
as a case asserting right of action for the price when the
title has not passed, but it involved not a mere sale of goods.
The contract was to manufacture hose for the city, and had
not been fully performed at all, the city having counter-
manded its order before the goods had all been manufactured
and delivered. It was an action for damages for breach of a
contract, not for the price of the goods. One of the ques-
tions was whether the value of materials so prepared for the
purposes of the contract as to make them less valuable for
other purposes and unfit for sale in the market could be given
in evidence as a circumstance bearing on the question of dam-
ages. The declaration was for damages for the breach,
not for the price, and the court did not discuss or state any
rule, governing the measure of damages. *Thompson* v. *Al-
ger*, 12 Metc. (Mass.) 428, cited to sustain the text in Sedg-
wick, was an action for the purchase price of certain corpo-
ration stock, and the court found and expressly declared that
the title had passed, and in that connection, stated that, if it
had not, the measure of damages would not have been the
contract price. It said "The contract of the vendor to sell to
the defendant 180 shares of railroad stock required a previ-
ous transfer of the shares on the books of the corporation.
This, from the very nature of the case, was a previous act; and,
when done, it passed the property on the books of the com-
pany to the defendant." *Hayden* v. *Demets*, 53 N. Y. 426,
is a case in which the title had passed. Originally the con-
tract was executory, but, without any dissent on the part of
the purchasers, a tender of the property was made. *Iron
Works Co.* v. *Railroad Co.*, 62 N. Y. 272, was a case of the
same kind. In *Mason* v. *Decker*, 72 N. Y. 595, there was no
withdrawal or renunciation before a tender was made. In
*Manufacturing Co.* v. *Marsh*, 49 Ia. 1, there was a delivery
at the place stipulated in the contract and the title passed.
In *Wade* v. *Moffet*, 21 Ill. 110, the suit was for the purchase
price of a certain mule, sold at auction, clearly a case of an
executed contract. In *Bell* v. *Offutt*, 10 Bush. (Ky.) 632,

the hogs for the purchase price of which the action was brought had been delivered at the place stipulated in the contract, without notice of dissent. *White* v. *Solomon*, 164 Mass. 516, involved an executed contract of sale. There had been a delivery of the subject matter within the time and at the place stipulated and without any dissent on the part of the purchaser until after this condition had been performed. *Smith* v. *Bergengren*, 153 Mass. 236, involved an executed contract. The defendant had made a conditional promise to pay the plaintiff $2,000.00 in case the former should renew his professional practice in a certain city. He did renew it, and thereby made the contract absolute. *Thorndike* v. *Locke*, 98 Mass. 340, was an executed contract, as appears from the syllabus, reading as follows: "One who has sold shares in a corporation, with a written agreement to take back, at the expiration of the specified time, all of them which the purchaser may then own, and to pay therefor a stipulated price, is liable to pay the full stipulated price, after the expiration of the time, and a tender of the shares then remaining unsold by the purchaser, both before action brought and at the trial thereof, and a refusal by the vendor to receive them." *Rodman* v. *Gilford*, 112 Mass. 405, involved an executed contract. At the time the action was brought the goods were in the actual possession of the defendant. It was rosewood cut into pieces of a certain shape for which the defendant had agreed to pay ten cents per pound. When he received the wood it was discovered that some of the pieces were imperfect. On this fact he based his defense to the action on the contract and the court held that he was bound to pay the agreed price for the 176 pounds which had been delivered according to the contract. In *Nichols* v. *Norse*, 100 Mass. 523, it appeared that the property had been delivered before the seller had any notice of the intention of the buyer not to accept. Hence, it was an executed contract. It will be found on examination of some of these Massachusetts cases that the distinction between the measure of damages on an executed contract and the measure thereof on an unexecuted contract is marked and not violated in any instance. *Lincoln Shoe &c. Co.* v. *Shelden*, 44 Neb. 279, was an action based upon a subscription to the capital stock of a corporation. The court said it was not a contract to purchase stock

of the corporation, but that, if it had been, the measure of damages would be the contract price of the stock, it having been tendered before suit was brought. It does not appear whether it was tendered before the subscriber declared his intention not to take it. On the face of the statement of the case, the contract was executed, if it be regarded as a contract for the sale of property; but we think the court rightly held it to be not a contract for the sale of property. It was an agreement to pay into a corporation a certain amount of money for corporation purposes, the consideration for which was the agreement of all the other stockholders to do likewise. *Barton* v. *McKelway*, 22 N. J. 165, was an action for the purchase price of mulberry trees, delivered pursuant to the contract, at the place agreed upon, and the defendant had done nothing more than refuse to take them into his possession—a clear case of an executed contract. In *Crawford* v. *Avery*, 35 Miss. 205, the price of a cotton gin was sued for and it appeared that delivery thereof had been made without any prior objection on the part of the purchaser. In *Walker* v. *Nixon*, 65 Mo. App. Rep. 326, the action was for the price of a suit of clothes which had been made to the order of the defendant. In *Wood* v. *Michaud*, 63 Minn. 478, the goods had actually been received by the defendants and they refused to pay for them and insisted upon returning them on the grounds that they were not the kind of goods contracted for. In *Van Brocklen* v. *Smeallie*, 140 N. Y. 70, it is said: "The vendor of personal property not delivered, has three remedies against the vendee in default." That is a sound proposition of law when properly applied, as it was in that case; but it is not applicable in all cases, nor does the court say so. Delivery is not always essential to the passage of title. The title may pass without delivery. In that case, it did. The action was for the purchase money of the plaintiff's interest in the assets of a co-partnership, consisting of real estate, stock on hand and other property. The subject matter was incapable of actual delivery. The plaintiff had agreed to sell, and the defendant to buy, this interest. Under the circumstances the contract was executed, passing the title immediately. The subject matter had been identified. It was the sale of specific property, and nothing remained to be done by the seller. In *Sedgwick* v. *Cottonham*, 54 Ia.

512, the plaintiff had contracted to sell to the defendant a carload of wheat, to be shipped to a point named, where it was to be taken from the car by the defendant, and paid for upon being weighed by him; and the car had been shipped to the designated station and placed on the sidetrack where it was accidentally destroyed. The title had clearly passed. *Bloyd* v. *Pollock*, 27 W. Va. 75, a parallel case. *Rosenbaum* v. *Weeden*, 18 Grat. 785, involved an executed contract. The goods had been actually received by the purchasers, who contended that they were not the goods ordered.

*Schwarzer* v. *Harsch Brewing Co.*, 74 N. Y. App. Div. 383, seems to assert a right of action for the price before the passage of title. In the opinion it is said: "The contract being valid and enforcible, the brewing company was bound to perform it or to pay such damage as could be legally enforced by reason of a breach. It was, therefore, powerless to prevent completion of the contract by the Brunswick Company. The latter completed its contract and tendered performance." In another place it says: "The brewing company could not prevent the Brunswick Company from performing its contract and recovering the purchase price of the articles, whether the brewing company gave notice that they would not fulfill the terms of their contract or not." No authority is cited for that proposition. The cases mentioned in the reference immediately preceding the statement are *Dustan* v. *McAndrew*, 44 N. Y. 72, *Hayden* v. *Demets*, 53 N. Y. 426, both of which we have here analyzed and ascertained to have involved executed contracts, and *Quick* v. *Wheeler*, 78 N. Y. 300. This last case expressly decided that there had been no revocation of the order under which the delivery had been made and the court settled this question, in order that it might say an action for the price was maintainable. In the last clause of the syllabus, it is said: "Also *held*, that on delivery of the timber at the place specified, plaintiff could treat it as belonging to defendant and sue for the purchase-price; that he was not confined to an action for damages." In this way, the court marked the distinction. Impliedly it said if the title had not passed, the plaintiff would have been confined to his action for damages. *Higgins* v. *Murray*, 73 N. Y. 252, on hasty examination, might be regarded as giving a right of action for the price, when

the property had not passed, but it does not do so. It merely says, "But when the contract is fully performed, both as it respects the character of the article, and the delivery at the place agreed upon or implied, and the defendant is notified, or if a specific time is fixed, and the contract is performed within that time, upon general principles I am unable to perceive why the party making such a contract is not liable. One person agrees to manufacture a wagon for another in thirty days for $100, and the other agrees to pay for it. The mechanic performs his contract. Is he not entitled to enforce the obligation against the other party, and if after such performance the wagon is destroyed without the fault of the mechanic, is the undischarged liability cancelled? It does not depend upon where the technical title is, as in the sale of goods. * * * * If the plaintiff had agreed to deliver the tent in Lewiston, as a part of the contract for its manufacture, he could not have recovered anything; but this was not a part of the contract. * * * As before stated, the point as to who had the title is not decisive. It may be admitted that the plaintiff retained the title as security for the debt, and yet the defendant was liable for the debt in a proper personal action." By this statement, the court simply meant that the legal title may have been in the manufacturer, by way of pledge for the purchase price, while the beneficial title was in the defendant. It was a mere retention of possession, not title, to secure the manufacturer's lien, *Putnam* v. *Glidden*, 159 Mass. 47, is classed as an authority sustaining the supposed Sedgwick rule, but it does not do so. It simply says that, if the vendor elect to keep the property for the vendee and sue for the entire contract price, he cannot maintain a second suit for the expense of keeping the property. It does not proceed upon the theory that the title had not passed. On the contrary, it assumes that it had passed. In the opinion, the general rule that the vendor has an election when the vendee returns or declines to receive property sold him, is merely stated. It was a second suit for the expense of keeping property and did not involve the merits of the original action. *Morse* v. *Sherman*, 106 Mass. 430, involved a contract for the sale of all the goods in a store of a certain kind at a certain price. The court held that the jury, upon the facts proven, would be warranted in finding that it

was the intion of the parties to make the sale absolute, subject only to the seller's lien for the price; and that, on such finding, the plaintiff was entitled to recover the purchase price.

Having seen how little authority there is for the supposed rule, we turn to those decisions which assert the contrary, and they are numerous. In *White* v. *Solomon*, 164 Mass. 516, 519, Fields, C. J., said: "Where the title does not pass to the vendee by the contract, and he declines to receive and accept the goods sold, the damages are the injury suffered from the breach, which usually is the difference between the price agreed upon and the market value of the goods at the time and place of delivery." For this proposition, he cites *Collins* v. *Delaporte*, 115 Mass. 159; *Whitney* v. *Thatcher*, 117 Mass. 523; *Schramm* v. *Sugar Refining Co.*, 146 Mass. 211; *Tufts* v. *Bennett*, 163 Mass. 398; *Laird* v. *Pim*, 7 M. & W. 474, all of which sustain him. In *Tufts* v. *Bennett*, Morton, Judge, said: "The rule seems to be pretty clearly established that the measure of damages in such a case is the difference between the market value of the goods at the time and place of delivery and the contract price;" for which he cites *Barry* v. *Cavanaugh*, 127 Mass. 394; *Whitney* v. *Boardman*, 118 Mass. 242; *Clement &c. Co.* v. *Meserole*, 107 Mass. 362; *Cutting* v. *Rrilway Co.*, 13 Allen 381; *Valpy* v. *Oakeley*, 16 Q. B. 941, found in 21 Eng. Ruling Cases 39. *Gordon* v. *Norris*, 49 N. H. 376, ably and exhaustively reviews the cases on the subject and states the conclusion as follows: "When the vendee refuses to receive and pay for ordinary goods, wares and merchandise, which he has contracted to purchase, the measure of damages which the vendor is entitled to recover, is not ordinarily the contract price of the goods, but the difference between the contract price and the market price or value of the same goods at the time when the contract was broken." In *Laird* v. *Pim*, cited, an action for the purchase price of land, the vendee having refused to accept a deed and pay the purchase price, Baron Parke said: "The measure of damages, in an action of this nature, is the injury sustained by the plaintiff by reason of the defendants not having performed their contract. * * * * It is clear he cannot have the land and its value too. A party cannot recover the full value of a chattel, unless under circumstances

18

which import that the property has passed to the defendant, as in the case of goods sold and delivered, where they have been absolutely parted with, and cannot be sold again.'' In *Valpy* v. *Oakeley*, the contract had been broken by the purchaser before execution thereof, and, it appearing that there was no difference between the value of the property in the hands of the vendor and the purchase price, Lord Campbell said: ''The question then remains as to the amount of damages: and I think these must be only nominal. Justice requires such a decision; and I rejoice that the law confirms it. * * * And, there being no difference shown between the market price at the time of default and the contract price, the vendees could have recovered only nominal damages; no more, therefore, can the assignees. The case rests upon the principle of stoppage *in transitu.*'' In *Simmons* v. *Swift*, 8 D, & W. 693, the action was for the value of bark sold. The purchaser had taken part of it and refused to take the balance. The court found the title did not rest in the vendee until the very bark had been ascertained and then declared: ''That neither an action for goods sold and delivered, nor for goods bargained and sold, would lie against the vendee for the amount.'' An examination of the English cases will disclose that they uniformly hold this. In one or two American cases it is said these decisions turn upon the form of the action or the allegations of the declaration, but this is an inaccurate conclusion. The reasoning in all these cases goes to the merits and fixes the measure of damages, denying the right to recover when the right has not passed.

If the binding offer to accept be not withdrawn, or the agreement to take the goods not broken, delivery is made with the assent of the purchaser and under a ''meeting of the minds of the parties,'' and accords with a basic principle of the law of contracts. But, if the contract be broken and the consent of the purchaser withdrawn, before delivery, the title does not pass by the assent of the parties, and there is no power in a court of law to compel specific performance of any kind of a contract. It has no remedy appropriate to, nor capable of administering, such relief. As the damages are deemed full and adequate compensation even by courts of equity, they ordinarily refuse specific performance of contracts of sale of personal property. Both courts recognized

the right of a party to an executory contract of such character to break it and force the other party to take damages in lieu of the performance of the promise, covenant or other duty. And the injured party can rightfully do no act by which his damages will be increased, as abandoning the property to waste or destruction. On the contrary, he is bound to minimize the damages when it can be readily done.

There is evidence tending to show that, before the goods contracted for by Older had been delivered to the railway company in Chicago for shipment, he modified the order and conditionally canceled or countermanded it, thereby giving notice that he would not receive the goods. This consituted a breach of the contract before the title passed, if the letter was received before delivery was made. The declaration contained no special count for damages for breach of the contract, and, if the jury had found that the note was not executed by the defendant, they would necessarily have found, but for the instruction given by the court, that the plaintiff could not recover on this declaration, for it must be presumed that they would have applied the law to the facts found. However, if the defendant executed the note, a contract to pay money, sufficiently declared upon, there might have been a recovery on the count based on it, notwithstanding the non-execution of the contract of sale, non-transfer of title. In this view, it is a case of failure of consideration in whole or in part, unless, by executing the note, the defendant precluded himself from the right to break his contract and put the plaintiff to the proof of damages for the breach instead of an action for the price. The note was a mere promise to pay money. It was not given without consideration, for the executory contract of sale was a sufficient consideration at the time it was given. It was a valid note, resting upon a valuable consideration. Therefore, an action could be maintained upon it. In the absence of proof of failure of consideration, fraud in the procurement thereof, payment or set-off, the whole thereof would be recoverable. But, if the thing for which the note was in reality given failed, this could be shown by way of defense in whole or in part, as the case happend to be. Paige on Contracts, sec. 1474, *et. seq.*, citing numerous cases. In some respects, the note is one thing and the executory contract upon which it was based another. As to right of action,

pleading and evidence, each stands on its own footing, but in substance, in the settlement of the ultimate rights of the parties, both are to be considered together. The giving of the note did not take away any of the rights of either party respecting the executory contract of sale out of which it grew or on which it was based. If the purchaser had refused to deliver the goods, that fact could have been proven as constituting a total failure of consideration by way of full defense to the action on the note. In most of the jurisdictions the note is regarded as having had no effect beyond that of postponing the right of action on the original contract, until the expiration of the period of credit stipulated in the note. It was not payment in advance for the property. On this subject, see American notes to *Valpy* v. *Oakeley*, 21 Eng. Ruling Cases 39, 46, Benjamin on Sales, (7th Ed.), 773, Daniel on Neg. Instr. (4th Ed.), ch. 39, and 18 Am. & Eng. Ency. Law, (1st Ed.) 167. A note is not in this State regarded as absolute payment of the debt for which it is given unless there is an express stipulation to the effect that it shall be. *Cushwa* v. *Building & Loan Assn.*, 32 S. E. 259; *Dunlaps Exrs.* v. *Shanklin*, 10 W. Va. 662; *Bank* v. *Good*, 21 W. Va. 465; *Miller* v. *Miller*, 8 W. Va. 550; *Pool* v. *Rice*, 9 W. Va. 73. In *Valpy* v. *Oakeley*, accepted bills for the iron had been given. Lord Campbell said: "But we must here look to the time of the bankruptcy, (the act constituting the breach of the contract). At that time bills given for the iron were outstanding. While current, they were payment. When dishonored they were waste paper; it was as if no bill had been given." This case is on the same footing. The action is between the original parties to the contract, not between a *bona fide* holder of the note, acquired by purchase in the market or otherwise, and the maker thereof, and all the equities come in. The parties stand as if no note had been given, except for the purposes of mere pleading and practice. Under his common law right to do so, the defendant may have revoked his order, withdrawn his offer to accept the goods before delivery thereof, and thereby taken away the plaintiff's right to recover the value thereof, and conferred upon him in lieu thereof the right to recover damages for the breach of the contract, and, if he did, the recovery on the note would be limited to the amount of the damages.

We think, too, the evidence was sufficient to carry to the jury the question of the execution of the note. It is not doubted that the signing of a note or other paper on presentation thereof, precludes a party from denying knowledge of its contents, when the party in whose favor it is executed or his agent has done nothing calculated to mislead, deceive or take advantage of him. To allow him to plead his mere ignorance of the contents of the paper, under such circumstances, is to permit him to take advantage of his own negligence and wrong. *Ferrell* v. *Ferrell*, 53 W. Va. 515; *Fulton* v. *Messenger*, 53 W. Va. 474. But when it is said that a man, who has signed a deed or other paper, cannot question it, merely because he signed and delivered it without having read it, an entirely different proposition is stated. If the opposite party has induced him by trickery, fraud or any kind of artifice not to read it, with a view to obtaining from him a paper which he could not otherwise have obtained, the right to prove these circumstances and thereby establish the fact, that he believed he was signing an entirely different paper and so relieve himself from the obligation thereof, is undoubted. It has been decided over and over. *Hale* v. *Hale*, 59 S. E. 1056, decided at the last term. *Curlet* v. *Newman*, 30 W. Va. 182; Kerr on Fraud and Mis. 388, 389; *Boyce* v. *Grundy*, 3 Pet. 210; *Holbrook* v. *Burt*, 22 Pick. 346. The defendant swears the plaintiff's agent assumed to read the whole paper signed by him, but actually read only a part of it and omitted to read the note, a very important and material part. The paper itself was peculiar in form, containing, first, an order for goods, second, a note for the amount of the order, and third, a long contract of guaranty. The agent also gave to the purchaser another paper which stated that it was to be attached to all orders and notes, and that paper stated mere terms of purchase and gave a right of extension, all inconsistent with the note. The testimony of the defendant to the effect that he did not know there was a note in the paper, taken in connection with these circumstances, was sufficient to raise a question proper to be submitted to the jury as to whether the note had been actually executed or not. If the signature to the paper as a note was fraudulently procured, the paper is not, in law, a note, although signed and apparently one.

Whether there was a right of extension of time for payment is now immaterial. The defendant never accepted the goods. They may not have been delivered. He has made no effort to sell them and could never do so now, if he were willing, since they were sold by the railroad company to satisfy charges for freight.

The error of the court in directing a verdict is made obvious by the principles and conclusions above stated. Therefore, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

<div style="text-align:right">

*Reversed. Remanded.*