KELLER MECHANICAL ENGRAVING CO. *vs.* THE KINNEY COMPANY.

MAY 28, 1909.

PRESENT: Dubois, C. J. Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Contracts.  Goods Bargained and Sold.*

An action for goods bargained and sold was brought upon a contract which stated "We have to-day sold to the Kinney Company two die cutting machines. The first machine is to be delivered in from two to three weeks approximately. When the machine is delivered, set up, and in satisfactory running order the Kinney Company agrees to remit their check for

$1,200." After the machine was built, but before delivery, defendant cancelled the order:—

*Held*, that the contract was executory and required not only delivery, but also that the machine should be set up in defendant's place of business, and put in running order satisfactory to defendant.

ASSUMPSIT. Heard on exceptions of defendant and sustained.

BLODGETT, J. The declaration contains the common counts in assumpsit and a special count for goods bargained and sold and the action is based upon the following agreement:

"PROVIDENCE, R. I., May 26th, 1905.
"THE KELLER MECHANICAL ENGRAVING COMPANY,
"570 West Broadway,
"New York City.

"We have to-day sold to the Kinney Company of Providence, R. I., two small electrical die cutting machines. The first machine is to be delivered in from two to three weeks approximately. When the machine is delivered, set up and in satisfactory running order, the Kinney Company agrees to remit the above parties their check for $1,200. The second machine to be called for at any time within twelve months. To be equipped in the same manner as the above machine, or any further improvements that shall be made on the said machines. The price for the second machine to be $1,000.

("Signed) KELLER MECHANICAL ENGRAVING CO.,
"Accepted. W. A. GUILE."

It appears by the undisputed testimony that the machines in question were not completed at the time this agreement was made, but that several weeks' work was necessary to complete each of them and that neither machine was ever actually delivered to the defendant.

After various delays not material to the decision of the fundamental question involved, the plaintiff notified the defendant on several occasions that one of the machines was ready for delivery and requested instructions as to shipment. The

defendant finally, in May, 1906, wrote the plaintiff the following letter:

"MAY 3, 1906.

"THE KELLER COMPANY:

"In reply to your letter of the 28th, inst., beg to state that we have delayed in answering in order to try and find out where the trouble was in the hub. We find that it is unsatisfactory and therefore ask you to kindly cancel order. Regretting our inability to go further into this matter, we remain,.

"Very truly yours,

"THE KINNEY CO.,

"H. F. G."

"And on May 16th following the plaintiff wrote the defendant as follows, this being the first notice to the defendant of the completion of the second machine:

"May 16th.   You state in your letter of May 10th, which was a reply to ours of May 7th, that you have told us exactly what your objections are. All we can find on this subject is your remark that while the outside of the hub sent you is better, the inside is not as good as that of the first hub made by us. We have since repeatedly asked you to state specifically what fault you found, to return the hub and we would cut another, eliminating the fault. Were you acting in good faith in this matter you would promptly comply with our suggestions. We can only construe your unwillingness to mean that you have no objection which can be pointed out and are merely making this a pretext to cancel your order for the machines. This we cannot permit. The machines are ready for delivery, together with the transformer that we have bought for you. We beg to remind you that these samples were merely cut on your machine to show that the machine was in good working condition. This the first samples proved, as well as the last, and the only criticism that we have ever heard thus far pertains to the model and not the machine work. We hereby notify you that we are holding the machines subject to your order, and enclose our bill for same.

"Yours very truly,

"KELLER MECHANICAL ENGRAVING CO."

At the conclusion of the testimony the defendant requested the direction of a verdict on the ground, among other grounds, that the plaintiff had misconceived its form of action and that if the defendant was liable at all it was liable only in damages for a breach of contract and not for the contract price in assumpsit or for goods bargained and sold.

The motion was denied and a verdict was directed for the plaintiff for the full contract price with interest and the defendant has duly excepted thereto.

(1) The defendant's exception must be sustained. The contract in question requires not only delivery, but also, that the machine shall be set up in the defendant's place of business, and shall be put in running order satisfactory to the defendant. The contract is clearly an executory contract. Even if the machines had been actually delivered at the defendant's place of business without more, the plaintiff would not have fulfilled all that it was bound to do. In addition to delivery, even if the machine had been set up but did not run properly, there still remained the obligation on the part of the plaintiff to put the machine in satisfactory running order before the defendant was bound to pay for it. Indeed, much correspondence was had and much delay caused in the endeavor to ascertain the proper electric motor and generator to be installed with these machines in order that they might be made to run satisfactorily after they were "set up," inasmuch as the current supplied the defendant's workshop was different from the one used at the plaintiff's factory. And the plaintiff's letter of November 23, 1905, shows that imperfect work was caused if the machines were not properly adjusted, since it refers to an imperfection in work done on a machine in their own factory "caused by a screw in the feed coming loose. We have remedied this so that it cannot possibly happen again."

The case is closely analogous to a case which the plaintiff has singularly relied on in its brief, *Moline Scale Co. v. Beed,* 52 Iowa, 307, where the defendant ordered a scale to be built for it "for which I agree to pay one hundred and twenty-seven and fifty one-hundredths dollars when the scale is built," and subsequently countermanded the order. The plaintiff, not-

withstanding, shipped the scale to the defendant at the address given in the order, which the defendant refused either to receive from the railroad company or to pay the freight thereon.   The court says (pp. 309–11): "The single question to be determined is, had the plaintiff the right to select the iron work of the scales after the order was countermanded, and by shipping to Hampton, and offering to build them, maintain an action against the defendant, not for the difference between the contract price and the actual value, but for the amount named in the contract as the price to be paid ?   The plaintiff must recover, if at all, upon the case made in the pleadings, and recovery is sought upon the theory that by shipping the scales, and offering to build them, the plaintiff is entitled to a judgment for the contract price.

"We are of the opinion that the action cannot be maintained. It will be observed that the contract was for scales to be 'built' by the plaintiff.   It is true the plaintiff had on hand the necessary iron work ready to be set up, but this, without more, is not the property named in the order.   The iron work was to be shipped and the scales built, that is, the frame and platform were to be constructed, for which defendant was to furnish the lumber.   Suppose a person should contract with a manufacturer for a wagon to be built, and agree to furnish the iron, and the manufacturer should have all the necessary woodwork on hand ready to be set up and ironed, and before anything was done the order should be countermanded, we think the manufacturer could not recover the contract price by setting apart the woodwork and calling upon the other party to furnish the iron."   .   .   .   "We think, from an examination of the authorities cited by counsel, as well as others that have come under our observation, that the true rule is that where everything has been done by the vendor which he is required by his contract to do, and the manufactured property in its completed condition is tendered to the purchaser, and he refuses to receive it, and it is held by the vendor for the purchaser, that the vendor may recover the contract price. The result of the judgment in such cases would be to vest in the purchaser the title to the property.   But where, as in the

case of manufactured articles, something remains to be done by the vendor, which requires the co-operation of the purchaser, and the purchaser refuses to perform, the contract price cannot ·be recovered. To adopt the contrary rule would allow the vendor to recover for a manufactured article, which is yet incomplete and unfinished, the full price of a finished article, and would be giving him more than his actual damages. We find no case which adopts such a rule."

So, in the case at bar "the co-operation of the purchaser," was required in respect of the approval of the setting up of the machines and their being "in satisfactory running order."

It is clear there cannot be a recovery on the common counts in the declaration and the special count alleges only a liability and promise to pay by the defendant on delivery without any further requirement as to setting up and placing in satisfactory running order. Clearly the plaintiff has neither averred nor proved the obligations of the contract which it was required to perform before payment could be required of the defendant, and this form of action cannot be maintained, whatever may be the rights of the parties in an action for breach of contract.

Numerous cases have been cited on plaintiff's brief relating chiefly to the measure of damages rather than to the form of action. In some of these there had been actual delivery in whole or in part—one is in a state where the distinction between differing forms of pleading has been abolished by statute, one is a proceeding in equity seeking specific performance of the contract or for damages in default thereof, one is an action of trover and conversion, and in several cases the goods in question were on hand and deliverable at the time of contract, while in others the action was brought for breach of contract.

In *Dustan* v. *McAndrew*, 44 N. Y., 72, cited by the plaintiff, the contract was for the sale of 100,000 pounds of hops, then in existence, "subject to Mr. J. S. Brown's inspection, or other mutually satisfactory." In the statement of the case it appears (p. 74): "Prior to November 30, John S. Brown had inspected the hops, and put his brand upon them, and certified that they were such hops as the contract called for.

On the 30th of November, J. S. & W. Brown were ready and willing to deliver the hops, and the defendants were requested to take them, and they declined on the sole ground, as they claimed, that they had not had an opportunity to examine them and inspect their quality, and because Messrs. Brown had refused to let an inspector, whom they sent, inspect the hops." The court held (pp. 76-7): "The contract required that the hops should be inspected by J. S. Brown, or some other inspector satisfactory to both parties. In case J. S. Brown could not, or should not inspect them for any reason, then they were to be inspected by some other person mutually satisfactory. Neither party had the right to demand any other inspector, unless Brown neglected or refused to inspect. It is doubtless unusual to insert a stipulation in contracts, that the vendor shall inspect the goods sold. But where parties agree to this, they must be bound by their contract, and it must be construed the same as if some other person had been chosen inspector." . . "The contract was for the sale and purchase of hops of a certain description, and the object of the inspection was to determine, for the benefit of both parties, whether they answered that description. Until the vendors delivered the hops with the inspection, the vendee was not obliged to pay, and when so delivered, the vendors were entitled to the purchase price."

The defendant's exception to the refusal to direct a verdict is sustained and the case is remitted to the Superior Court with direction to enter judgment for the defendant.

*Edward C. Stiness, Archibald C. Matteson and John A. Tillinghast,* for plaintiff.

*John P. Beagan,* for defendant.