# CHARLESTON.

STATE, *which sues for the use and benefit of* E. I. DUPONT DE NEMOURS & COMPANY, INC. *v.* S. C. CODA *et als.,* *Defendants Below,* P. J. RILEY, *Appellant*

(No. 5780)

Submitted May 10, 1927.        Decided May 17, 1927.

1. HIGHWAYS—*Materialman, Creditor of Road Contractor, Bonded to Pay for Material, Has Equitable Lien on Money Retained by State Road Commission; Lien of Materialman*

*Creditor of Road Contractor, Bonded to Pay for Material,
on Money Retained by State Road Commission, is Superior
to Contractor's Assignment to Creditor (Code, c. 43, § 25).*

A materialman creditor of a public highway contractor who
has given bond to the State Road Commission, conditioned,
among other things, that he will well and truly pay all per-
sons who have furnished material or labor in the construction
of the highway, has an equitable lien on the money retained
by the Commission under the contract until the completion of
the work, and is entitled to be paid therefrom, upon default
of the contractor, in preference to a creditor who, upon the
completion of the work, has obtained from the contractor an
assignment of a part of the fund to pay for money loaned the
contractor to be used by him in performing his contract.   (p.
683).

(Highways, 29 C. J. § 349 [Anno].)

2.  SAME—*Subrogated Surety on Road Contractor's Bond Has
Right to Money Retained by State Road Commission
Superior to Creditor Assignee of Contractor; Contractor's
Creditor and Assignee is Entitled to be Paid Money Re-
tained by Road Commission Only After Materialmen and
Labors Are Paid (Code, c. 43, § 25).*

In such case the equities of the surety on the contract bond
under its right of subrogation to the rights of the contractor,
are superior to the money-lending creditor, who is only en-
titled to be paid under his assignment the remainder of the
fund after paying the materialmen and laborers for whose
claims the surety has become liable under the contract bond.
(p. 685).

(Highways, 29 C. J. § 350 [Anno].)

3.  SAME—*Contractor's Agreement to Reimburse His Surety for
Attorney's Fees and to Confess Judgment Therefor Does
Not Create Lien Against Money Due Contractor; Directing
Payment of Surety's Attorney's Fees From Money Due
Road Contractor in Preference to Contractor's Assignee
Without Notice Held Error (Code, c. 43, § 25).*

Where, in such case, the contractor has agreed with the
surety that he will reimburse the surety for attorney's fees
expended by reason of such suretyship, and will confess judg-
ment therefor whenever the surety shall become liable to pay
the same, no lien is thereby created against the money due the
contractor from the Commission; and it is error to direct pay-
ment of such fees therefrom in preference to a valid assign-
ment of such fund to another who has taken such assignment
without notice of the surety's claim for fees.   (p. 688).

(Highways, 29 C. J. § 349.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not
part of syllabi.)

Appeal from Circuit Court, Cabell County.

Suit by the State, for the use and benefit of E. I. DuPont de Nemours & Co., Inc., against S. C. Coda and others. From a decree directing distribution of a fund retained by the State Road Commission, P. J. Riley appeals.

*Modified and affirmed.*

*Simms & Staker,* for E. I. Du Pont de Nemours & Co.

*Hogsett & Sheets,* for appellant.

*Brown, Jackson & Knight* and *Herman L. Bennett,* for Aetna Casualty & Surety Co.

*Meldahl, Pool & Mauzy,* for Standard Oil Co.

*Vinson, Thompson, Meek & Renshaw* and *Harry Scherr,* for Hagen, Ratcliff & Co.


LIVELY, JUDGE:

S. C. Coda and C. A. Nash were partners as road contractors, and were successful bidders before the State Road Commission for the construction of ''Seng Creek toward Seth'' road, in Boone County, executing to the State a bond in the penalty of $21,800.00 with Aetna Casualty & Surety Company as surety, conditioned for the faithful performance of the contract and for payment of laborers and materialmen. Having signed the contract and bond, Coda and Nash, partners as Coda-Nash Company, a few days later, incorporated as Coda-Nash Company and proceeded to build the road. Upon its completion, the State Road Commission owed it $4,011.06 against which Coda-Nash Company had given orders and assignments to creditors, amounting to $4,010.71, and it is over the distribution of the fund held by the Commission that the litigation arises. The decree directed distribution of the fund to the creditors in the order of dignity and priority ascertained by a commissioner in chancery, from which decree P. J. Riley appeals.

The application for the surety bond contained a provision that should the principal fail to carry out the contract whereby the surety became liable, any balance due from the obligee

after completion of the contract was assigned to and should be paid to the surety to protect it against liability, and after all liability of the surety had been paid, including costs and attorney's fees incurred, any balance remaining should be paid to Coda and Nash, the applicants for the bond. This application was kept by the surety company in its files and the assignment therein was not claimed by it until after this suit was begun. The contract and bond for its performance were entered into Feb. 8, 1923, and the road work progressed until about the beginning of the year 1925. In 1923, the Coda-Nash Company purchased explosives from E. I. du Pont de Nemours & Company, on which payments were made leaving a balance due the du Pont Co. of $2,637.15; in Oct. 1923, the corporation owed the Standard Oil Company, $137.70 for oils; and during the progress of the work became indebted to Hagen, Ratcliff & Co., for $410.53 for groceries used in the boarding house to feed the laborers on the project. In the Spring of 1924, the road was nearly completed, but the contractor was without funds to pay the laborers and applied to appellant P. J. Riley for money for that purpose, promising to pay him out of the next estimate allowed by the Commission, and when the work was completed to give him an assignment of the funds due it, if he had not been paid. Riley advanced $4,000.00, May 19, 1924, and a further sum of $1,200.00, Oct. 14, 1924, all of which went to pay the laborers. Prior to the final estimate Riley was paid by order on the Commission on funds due the Corporation on road work in Logan County (another project) the sum of $3,160.00, leaving a balance due him with interest of $2,218.00, for which sum he received an order and assignment on the Commission on Dec. 12, 1924, which was immediately filed with the Commission.

The orders and assignments given by Coda-Nash Company against the balance of $4,011.06 in the hands of the Commission, with dates and amounts, are as follows:

Bank of Whitesville......Oct. 28, 1924........$  900.00
P. J. Riley....................Dec. 12, 1924........ 2,218.00
Standard Oil Co.............Dec. 22, 1924........   137.70

Hagen, Ratcliff & Co.....Dec. 22, 1924........    410.53
E. I. du Pont & Co.........Dec. 23, 1924........    334.48
                                              _____
                                              $4,010.71

The du Pont Company began the suit by setting up its account of $2,637.15 against Coda and Nash as partners, and the surety on the bond given by them to protect materialmen, and prayed relief against them and their surety on the bond. The surety company answered in the nature of a cross-bill, bringing in as parties the above named persons holding assignments on the fund in the hands of the Commission, made the Commission a party, alleged that the $4,011.06 was a trust fund in its hands to protect the surety, and that there were conflicting claimants of the fund, the total amount of whose claims was $6,303.73; set up the application of Coda-Nash Company for the surety bond, alleging that thereby it had assigned all funds to become due it from the Commission for the protection of the surety; charged that the attempted assignments later given were without effect and void insofar as the surety was concerned; claimed it was entitled to reasonable attorney's fees from the fund; charged that the claims of Hagen, Ratcliff & Co., Riley, Standard Oil Co., Bank of Whitesville, and du Pont Co. were not for labor or material furnished on the project; and prayed for an adjudication of the conflicting claims against the fund; and for general relief. The Commission answered that it had $4,011.06 in its hands, and asked for a decree of distribution. Riley answered, denying that Coda and Nash did any work on the road or purchased any material therefor; alleged that Coda and Nash incorporated February 8, 1924, and took over, by assignment from Coda and Nash, the road contract, did the work and purchased materials, and that the fund in the hands of the Commission belonged to Coda-Nash Company, a corporation, subject to its assignments, and did not belong to Coda-Nash Company, a partnership. He charged the inability of the corporation to meet its pay-rolls in 1924, its application to him for money for that purpose, his loan to it, and the contract of repayment out of the moneys due and to become due

from the Commission, and his assignment of Dec. 12, 1924. He denied that the $4,011.06 was a trust fund, denied that the fund had been assigned to indemnify the surety under the application for the bond, or if an assignment had thereby been made, such assignment was never filed with the Commission and could not take preference over his (Riley's) assignment; and prayed for payment of his $2,218.00, by the Commission. Coda and Nash filed separate answers, averring that the corporation purchased materials for the road, and that they were in no way responsible, that the corporation built the road, and that the fund had been rightfully assigned by the corporation. Hagen, Ratcliff & Co. answered, setting up its debt for groceries, charging that it was covered by the surety bond, and payable by the surety, and setting up its assignment of Dec. 22, 1924; and praying for payment out of the fund and from the Coda-Nash Company and the surety on its bond. The Standard Oil Co. answered, claiming its account as material furnished, setting up its assignment of Dec. 22, 1924, and claiming payment from both the fund and the surety on the bond.

A master commissioner took evidence, from which he reported that Coda-Nash Company, a partnership, after it had taken the contract and given the surety bond for performance thereof and payment of laborers and materialmen on February 2, 1923, assigned its contract to Coda-Nash Company, a corporation, claimed to have been formed on February 8, 1923, and that the corporation built the road. However it appeared that none of the creditors (with the exception of Hagen, Ratcliff & Co.), the Commission, nor the surety had any notice of the formation of the corporation or of the assignment of the contract, and all dealt with Coda-Nash Company as a partnership, and the commissioner reported that for purposes of the suit the corporation, if so formed, was not a necessary party in the adjustment of the conflicting claims against the fund in the hands of the Commission. He reported the du Pont Co. claim of $2,863.78, and the Standard Oil Co. claim of $148.68 (including interest on both), as owing by the partnership and covered by the

surety bond, being for material used in the road, and as first
liens against the fund.    The expenses of the surety company
in defending the suit, which included an attorney's fee of
$500.00, were reported as the second lien on the fund.    The
Commissioner reported that under Sec. 25, Chap. 43, Code,
and under a provision of the application for the bond the
fund was applicable to discharge of the claims which were
covered by the surety bond; and that the assignments on the
fund were subject to the prior right of the surety on the
bond.    The P. J. Riley claim of $2,218.00 was reported as
the third lien on the fund, by reason of the assignment given
him Dec. 12, 1924, but not as a valid claim against the surety
under the bond.    The Hagen, Ratcliff & Co. claim of $410.53
for groceries was rejected as being covered by the bond; but
was reported as a claim against the fund by reason of its
assignment of Dec. 22, 1924, and last in priority.    Coda ex-
cepted to the report, because it reported that the fund was
owing to the partnership instead of to the corporation; that
the partners were responsible for the du Pont and Standard
Oil debts; and that the surety had prior claim on the fund to
the discharge of the debts for which it was liable, including
the attorney's fee.    Riley excepted, because the commissioner
reported the fund as belonging to the partnership and liable
to the payment of the debts, ignoring the corporation; be-
cause the materialmen's debts were held to be first liens, by
virtue of the bond and the law, and exceptor's debt was re-
ported third in priority.    Hagen, Ratcliff & Co. also excepted
to the finding against it.    The decree overruled the exceptions,
confirmed the report, decreed the distribution of the money
in accordance therewith, fixed the order of priority as therein
reported, and appointed a commissioner to receive the fund
and distribute it.

Riley is the only appellant.

The first point of error is that inasmuch as the construction
contract was assigned by the partnership to the corporation
which did the work, the fund belonged to the corporation.
That proposition may be conceded as between the partner-
ship and corporation, but the assignment of the contract did

not free it from its obligation; nor release the obligors and surety on the bond given for its performance. 2 R. C. L. Sec. 34, p. 626. The contract cannot be thus divorced from the bond. If so, a contractor could relieve his bondsman and himself from liability by assignment to an irresponsible assignee, or to one, who being financially responsible, afterwards failed. The law requires a bond to be taken to insure the performance of a road contract, and the assignee of the contract must take notice of that bond and its conditions. A surety has the right to stand upon the express terms of his agreement, and any change by his principal and the obligee in the contract, to insure the performance of which he has become surety, without his consent, to his detriment or disadvantage, will relieve him from liability on the bond. *Miller* v. *Stewart*, 22 U. S. 680. It appears, however, that neither the surety nor the Commission knew of the assignment by the partnership to a corporation. In fact, the existence of the corporation was not known by them, and the work was carried on to completion by the same concern which contracted to do the work. The record does not disclose the names of the incorporators, the stockholders, officers, amount of stock authorized or paid in, nor its powers and corporate purposes. Very little is said about it, except that it was inspired by Coda and Nash in order to carry on their partnership business, and was created a few days after the contract was awarded and bond given. The stationery used appears to be the same as that used by the partnership with the names of the partners on the letterhead. The application for the surety bond is signed, "S. C. Coda & C. A. Nash partners trading as Coda Nash Co. By C. A. Nash By S. C. Coda, one of the partners, Mrs. S. C. Coda, T. H. Nash, M. J. Riley." Just what interest Mrs. S. C. Coda, T. H. Nash and M. J. Riley had in the partnership does not appear. It does appear however that M. J. Riley (the son of appellant P. J. Riley) owned stock in the corporation. However, we cannot see how the surety was prejudiced by the assignment of the road contract, for the work was done to all intents and purposes by the partners, and the road was completed and ac-

cepted by the Commission. S. C. Coda was in active charge of the work. The corporation was evidently formed for the purpose of carrying out the contract, and was operated and controlled by the members of the partnership. The du Pont Company and the Standard Oil Company were not advised that they were dealing with a corporation. There is some conflict in the evidence on that point, but the lower court found the partnership liable for the debts of these two creditors, and the members of the partnership do not appeal. Only P. J. Riley and Hagen, Ratcliff & Co. appear to have known that they were extending credit to the corporation. But, as above stated, the corporation cannot escape the liabilities and duties under the contract and the bond securing its performance. It does not stand on any higher plane than its assignor. Therefore, we think the point of error without merit so far as the rights of the appellant and the surety are concerned. The controversy on this appeal is between appellant on the one side, and the du Pont Company, Standard Oil Company, and the surety on the other, as to priority of payment from the fund, and we deem it immaterial whether that fund belongs to the partners or to the corporation, because it is impressed with the rights of the surety and materialmen under the contract and bond which brought it into existence.

The main point of error urged is, that the fund having been assigned to Riley to the amount of his debt for $2,218.00, on Dec. 22, 1924, and the assignment made to the surety company in the application in the year 1923 to protect it as such surety, and it appearing that Riley had loaned money for the purpose of paying the laborers, thus relieving the surety of that obligation, his assignment though later in point of time is superior to that of the surety, and it was error to give the surety preference. Appellant invokes the doctrine that as between two equitable assignments the last in time is entitled to preference if it be impressed with a higher equity than the first in time. *Hoult* v. *Donahue,* 21 W. Va. 294; 2 R. C. L. 627; Hoggs Eq. Sec. 321; and Pom. Eq. Sec. 682, are cited and relied upon.

In the discussion of the equities as between Riley and the surety, the fact must not be overlooked that the materialmen (du Pont and Standard Oil) have rights which must be protected and which are accorded in the decree. What claim or equity do these materialmen have to the fund? The road law, Sec. 25, Chap. 43, Code, requires the Commission to take a bond from the successful bidder on a road project, not to exceed one-half the contract price; and Sec. 12, Chap. 75, Code, requires public legal bodies, such as the Board of Control, County Courts and the like, having authority to contract for the erection of any public building or other structure to be used for public purposes, to take a bond conditioned that in the event the contractor shall fail to pay in full for material and labor used by him, then the contractor and surety therein shall become responsible to the materialmen and laborers, for the full amount of such material and labor. A permanently improved highway is a "structure" within the meaning of this act. *State ex rel Sand & Gravel Co.* v. *Royal Indemnity Co.,* 99 W. Va. 277, 43 A. L. R. 552. The public policy of this State is to secure payment to the materialmen and laborers in the building of structures to be used by the public. These two statutes must be considered together. The Commission recognized this requirement of the law, and the bond taken by it in this case is conditioned not only that the contractor shall well and truly perform the contract and save the State harmless, but "shall well and truly pay all and every person furnishing material or performing labor", in the construction of the roadway, for which the contractor is liable. The Standard Oil and du Pont have come into court and assert this liability against the contractor and the surety on the bond. The suit is on the bond, and is to enforce this obligation of the contractor, and, as above stated, the corporation was bound to take notice of the statute and the terms of the bond securing performance, and stands in no better position than the partnership. The bond and contract should be considered together. *First Nat. Bank* v. *School Dist.,* 110 N. W. (Neb.) 349.

Can the contractor, or the corporation standing in his shoes, divert by assignment to a general creditor the money due him under his contract and bond, to the detriment of the materialman and his surety? The contractor agreed with the Commission that it would pay the materialmen. The provision for retaining moneys in the hands of the Commission was for the benefit of the Commission; and it was the duty of the Commission to see that the fund so retained was used to discharge the obligation of the bond. *Prairie State Nat. Bank* v. *U. S.,* 164 U. S. 227, 41 L. Ed. 412. A similar situation arose in *Ill. Surety Co.* v. *City of Golion,* 211 Fed. 161. There a construction company contracted with the city to build a sewer disposal plant, and gave bond which provided, among other things, that the construction company should pay for materials and labor used in the work. Later the construction company agreed with a bank that it would furnish money to enable it to pay its workmen, and the money received from estimates paid by the city should be applied to repayment of the money loaned. The surety was notified of the making of this contract but made no response. Upon the final estimates coming in, the bank claimed the fund under the contract assigning the estimate money to it, and as subrogated to the rights of the laborers. The surety company asserted that the fund was subject to the payment of the materialmen's claims remaining unpaid, and that its equity was superior to that of the bank. The court held that the equity of the surety company was superior to that of the bank (which was a creditor), and that the surety was subrogated to the right of the contractor to the fund, but that the bank was not; and decreed that the fund be first applied to the liquidation of the unpaid claims of the materialmen and laborers, and that the residue, if any, be paid the bank. In the present case the materialmen are directly seeking payment from the fund under the provisions of a similar bond. Chancellor Day, who wrote the opinion in the *Illinois Surety Company* case, cited *Henningsen* v. *United States Fidelity & Guaranty Co.,* 208 U. S. 404; *Prairie State Bank* v. *United*

*States,* 164 U. S. 227; and *United States* v. *Rundle,* 107 Fed. 227. These citations sustain Judge Day's opinion.

Under the principles of these cases, and under the public policy gathered from our statutes above referred to, we are of the opinion that the du Pont Company and Standard Oil Company claims against the fund are superior in equity to that of the appellant, who was a mere creditor, and therefore the decree giving them preference will not be disturbed. The question of the superiority of Riley's assignment in 1924 over that of the assignment claimed by the surety in the application made for the bond in February, 1923, is not controlling, and is of little importance.

The two remaining points of error are: (1) Allowance of a preference of an attorney's fee of $500.00 to the surety for services rendered in litigation against it on the bond, and (2) Appointment of a receiver to receive and disburse the fund to those entitled at a commission of 3%.

As to the allowance of the attorney's fee to be paid to the surety out of the fund, after first paying the materialmen, we find that payment of such fees was made a matter of contract between the contractor and the surety, wherein the contractor expressly agreed to reimburse the surety for such fees paid by it in connection with any litigation in consequence of the suretyship. A provision is made for confession of judgment for such fees, and like expenses. This contract is incorporated in the application for the bond to the surety company. It is therein provided that such fees may be paid by the obligee out of the fund as it accrues in its hands, upon delivery to it of a copy of the application with a notice of non-payment of any premium charge. No copy was ever delivered to the Commission. Another provision in the application is to the effect that if there is a default in the completion of the contract or failure to comply with its provisions, whereby the surety becomes liable for loss, all payments may be withheld by the obligee to be used only in completion of the contract; and any balance remaining in the hands of the obligee shall, as soon as the contract is completed, be paid to the surety, ''and this covenant shall operate as an assign-

ment thereof,'' and the residue, if any, after such re-imburse-
ment, shall be paid to the contractor, after all liability of the
surety has ceased to exist under the bond. It is under this
provision that the surety asserts a prior assignment to that
of Riley of all the fund in controversy, for the payment of
the materialmen. An assertion which we have not deemed
necessary to pass upon in holding that the materialmen had
superior equity to the fund as decreed. We cannot see how
this provision assigns the fund for payment of attorney fees
incurred by the surety. It does not in terms nor by implica-
tion do so. Nothing is contained in the bond which requires
the contractor to pay fees. Wherefore, the application con-
tract being a person one of which Riley did not have actual
or constructive notice, it would not take preference over his
assignment.

Counsel for the surety company cite *U. S. F. & G. Co.* v.
*Hittle,* (Iowa), 96 N. W. 782; *Ellis* v. *Norman,* (Ky.), 44 S.
W. 429; and *Bankers Surety Co.* v. *Cross,* (Neb.), 158 N. W.
457, to sustain the decree allowing the attorney's fee as a
preference over Riley's assignment. The *Iowa* and *Nebraska*
cases were suits by the surety for attorney fees in defending
suits on the bond. The obligors had agreed to pay these fees,
and the suits were on the contract of indemnity, and in each
case the court said that as the sums paid out were necessary
and reasonable, the obligor should pay under his contract.
In the *Kentucky* case the plaintiff Ellis had gone on a saloon-
keeper's bond, and had taken from Norman a bond to in-
demnify plaintiff against loss, attorney's fees, costs, and the
like, by reason of his suretyship for the saloon-keeper. He
had employed counsel in suits brought on the saloon-keeper's
bond, and sued Norman, who had indemnified him against
such expense. These cases have little application here.
There can be no doubt that a suit can be maintained by the
surety against the contractor, on his agreement to repay
attorney fees expended. But here the surety seeks to obtain
a preference against a fund on which it has no lien. It
simply has a contract that it shall be repaid, and that contract
does not bind any fund or property for payment.

The action of the court in directing its receiver to receive and disburse the fund under its direction and inspection was within its discretion, and will not be disturbed.

The decree will be modified insofar as it finds that the assignment of S. C. Coda and C. A. Nash as partners trading &c., to the Aetna Surety Company of the fund of $4,011.06 in the hands of the State Road Commission, includes payment therefrom of an attorney's fee of $500.00, and orders that said fee be paid in preference to the claim of P. J. Riley evidenced by assignment to him dated Dec. 12, 1924; and in all other respects the decree will be affirmed, with costs to the appellees, as the parties substantially prevailing.

*Modified and affirmed.*