C. L. Bowling *v.* Julian Construction Company *et al.*

(No. 6890)

Submitted March 10, 1931. Decided March 17, 1931.

*J. H. McGinnis* and *Fletcher W. Mann*, for appellant.
*C. O. Dunn*, for appellees.

MAXWELL, JUDGE:

Appellant, surety on a road contractor's bond, complains of a decree of the circuit court of Raleigh County fixing liability on the surety for the aggregate of certain orders issued by the contractor to one Pack, a merchant, on the basis of which orders Pack furnished goods and merchandise to employees of the contractor. Pack intervened by petition and is appellee here.

Conditions of the bond required the surety to "save harmless the State of West Virginia from any expense incurred through the failure of said Contractor to complete the work as specified, * * * or for any liability for payment of wages due or materials furnished said Contractor, and shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway all and every sum or sums of money due him, them, or any of them, for all such labor and materials for which the Contractor is liable."

In the case of *Morton Motor Co.* v. *Casualty Co.*, 109 W. Va. 67, 152 S. E. 860, we held that the purchase price of trucks sold by a dealer to the contractor for use on the construction work contemplated by the bond was not protected by the bond. Both in that case and this one the bond was given in pursuance of section 25, chapter 43, Code 1923. In *Hicks* v. *Randich*, 106 W. Va. 109, we held that the bond there involved covered the cost of materials and labor used in the repair of trucks which were employed in the construction work designated in the bond. In that case the contract was awarded by a county court for the construction of a county-district road and the bond was given under the requirements of section 104, chapter 43, and section 12, chapter 75, Code 1923. Careful distinction between the two cases is made in the opinion in the *Morton Motor Company* case.

In *State ex rel.* v. *Coda*, 103 W. Va. 676, 687, we held that materialmen who had furnished oil for machinery, and explosives for blasting were protected by the road contractor's bond. The cost of feed for horses and mules employed on a construction job has been held to be protected by the contractor's bond. *Carter County* v. *Oliver-Hill Const. Co.*, (Tenn.) 228 S. W. 729; *Fidelity & Deposit Co.* v. *Bailey*, (Va.) 133 S. E. 797; *U. S. Fidelity & Guaranty Co.* v. *Henderson County*, (Texas) 253 S. W. 853.

As to the cost of foodstuffs for men employed on a construction job, the weight of authority is that such cost is not within the contractor's bond unless it was necessary for the contractor to furnish such food to his men. The leading case is *Brogan* v. *National Surety Co.*, 246 U. S. 257 (1918) in which Mr. Justice Brandeis, speaking for the court, held: ''The bare fact that the supplies were furnished to the contractor and were consumed by workmen in its employ would have been immaterial. A boarding house might be conducted by the contractor (like some company stores concerning which states have legislated, *Keokee Coke Co.* v. *Taylor*, 234 U. S. 224) as an independent enterprise undertaken solely in order to utilize the opportunity for separate and additional profit afforded by the congregation of many laborers in the particular locality where the public work is being performed.

The laborers might resort to such a boarding house in the exercise of individual choice in the selection of an eating place. Under such circumstances the furnishing of supplies would clearly be a matter independent of the work provided for in the contract and would not entitle him who had furnished the groceries used in the boarding house to recover on. the bond. But here, according to the undisputed facts and the findings of the trial court, the furnishing of board by the contractor was an integral part of the work and necessarily involved in it. Like the supplying of coal to operate engines on the dredges, it was indispensable to the prosecution of the work, and it was used exclusively in the performance of the work. Groceries furnished to a contractor under such circumstances and consumed by the laborers, are materials supplied and used in the prosecution of the public work.'' In accord, *Carter County* v. *Oliver-Hill Const. Co., supra; Fidelity & Deposit Co.* v. *Bailey, supra; U. S. Fidelity & Guaranty Co.* v. *Henderson County, supra; Overman and Co.* v. *Casualty Co.,* (N. C.) 136 S. E. 250. Some cases are to the effect that foodstuffs are not within the bond even though the contractor boards his own employees. *Lillard* v. *Indemnity Co.,* (Mo.) 282 S. W. 168; *Carson* v. *Shelton,* (Ky.) 107 S. W. 793.

It not appearing that there were circumstances of necessity, or a contractual undertaking, which required the contractor to furnish groceries for his employees in this case, we are of opinion that the bond did not cover the price of foodstuffs furnished by a merchant to the employees, even upon order of the contractor.

But appellee argues, granting that groceries for the employees do not come within the purview of the bond, nevertheless the orders, issued by the contractor to the laborers on the basis whereof appellee furnished groceries to them, amounted to equitable assignments, *pro tanto,* of the wages due them, and that appellee now is subrogated to the rights of the employees against appellant. It is conceded that under the bond the employees could recover from the appellant in the event the contractor failed to pay their wages. Likewise, it is clear that the employees could have assigned their claims for wages, and such assignment would be protected under

the bond. *Bank* v. *Guardian Co.*, (Wash.) 161 Pac. 473; *Trust Co.* v. *Porter and Boyd*, (N. C.) 132 S. E. 806. But there were no assignments in the instant case, unless the fact that the employees accepted the groceries under the agreement between the contractor and appellee, with which agreement the employees had nothing to do, can be adjudged an equitable assignment which will place the appellee in the employees' shoes. Authority is to the contrary. In the Texas case of *Hess & Skinner Co.* v. *Turney*, 207 S. W. 171, and 216 S. W. 621, the contractor borrowed money from a bank and paid his employees therewith. The bank attempted to collect this debt from the surety company, claiming it was subrogated to the rights of the laborers under the surety bond. But the court held: ''The contractors at the time they borrowed this money represented to the bank that they needed it to pay wages due the laborers. This was true, and the money was used for that purpose. The laborers, however, were not parties to this transaction. When they were paid, their debts were extinguished. The transaction did not constitute an equitable assignment of their debts, and did not subrogate the bank to their claims against appellant.'' It is true, as contended by appellee, that syllabus 1 of this case (207 S. W. 171) holds: ''An agreement whereby merchants were to furnish to laborers goods for which their employees were to pay from wages due amounted to an equitable assignment of the claims for wages,'' but it appears from the facts in the case that the agreement was not only between the contractor and merchants but that the laborers also entered into it. Such is not the situation in the case at bar. To the same effect as the Texas case are *Carter County* v. *Oliver-Hill Construction Co., supra; U. S.* v. *Rundle,* 107 Fed. 227, 52 L. R. A. 505; *U. S. Fidelity and Guaranty Co.* v. *Henderson County, supra; Carr Co.* v. *Chicago Bonding & Surety Co.,* (Iowa) 181 N. W. 680.

For reasons above set forth the decree complained of is reversed and the cause remanded.

*Reversed and remanded.*