FIDELITY & DEPOSIT COMPANY OF MARYLAND *v.* THE COUNTY COURT OF LEWIS COUNTY *et al.*

(No. 9139)

Submitted April 30, 1941.   Decided June 3, 1941.

*Clarence W. Meadows,* Attorney General, and *W. Holt Wooddell,* Assistant Attorney General, for appellant.

*Steptoe & Johnson, James M. Guiher* and *Norman S. Elliott,* for appellees.

Fox, Judge:

This cause comes to us from the Circuit Court of Lewis County, where, upon the pleadings alone, a final decree was entered adjudging that the sum of $1,592.00, in the hands of The County Court of Lewis County be paid to the plaintiff, Fidelity & Deposit Company of Maryland, and denying the claim of the State of West Virginia thereto based on a claim for gross sales tax assessed against John L. Earnest & Sons Co., Inc., on its business as a contractor.

In August, 1937, The County Court of Lewis County awarded to John L. Earnest & Sons Co., Inc., a corporation, a contract for the erection of a county jail, at its bid of $62,450.00. The contractor was required to furnish a bond for the faithful performance of its contract, which bond included all of the requirements of Code, 38-2-39, and the appellee herein, Fidelity & Deposit Company of Maryland, became surety thereon. The contractor did not complete its undertaking, and the same was taken over by the surety on July 6, 1938, and completed. The contractor, prior to its default, had been paid on its contract approximately $55,000.00, and later the county court paid to the surety the sum of $4,345.32, but declined to pay to it the sum of $1,592.00 by reason of the assertion of the state's claim in that amount, $1,100.00 of which sum was asserted by reason of the contract aforesaid with the county court, and the residue as taxes accruing from other contracts performed by the contractor within this state. Notice of the claim of the state was given by letter directed to the county court, dated April 5, 1938. Thereafter this suit was instituted, and the county court filed a petition interpleading between the plaintiff and the state, with the result stated above, and the State Tax Commissioner prosecutes this appeal.

Under the contract between John L. Earnest & Sons Co., Inc., and the county court, it was provided that the court should be permitted to retain a minimum of five per cent of the contract price pending completion of the work, and, notwithstanding claims to the contrary, it is, we think, apparent that at the date of the default the retained percentage was in excess of the state's claim for taxes. Under the terms of the bond here involved, this retained percentage, together with all other amounts due the contractor thereunder, passed, upon default, to the surety, and it is under this provision of the bond, as well as upon principles of subrogation to be hereafter dealt with, that the surety claims the amount now being held by the county court. It is contended by the surety that the entire fund due under the contract, including retained percentage, did not at any time become the property of the contractor, and for that reason the lien of the state never attached to the fund now in dispute.

The lien of the state for gross sales tax is admittedly limited to the property of the taxpayer "used in the business or occupation upon which such tax is imposed." Chapter 106, Acts, 1937, (Michie's Code, 1937, 11-13-12). In view of this limitation we are asked to hold that the earned income from the contract, out of which a major portion of the taxpayer's total income is derived, should be held exempt therefrom because it never became the property of the taxpayer. In effect, the contention, as applied to this case, would be that the lien attaches only to tangible property, or to some other property of the taxpayer, used in its business or occupation, not connected with its contract with the county court. This to us seems too narrow a construction of the statute involved. In the first place, the all-inclusive term "property" was, we think, intended to cover not only the physical and tangible property of a taxpayer used in his business, but all other property, of whatever character, which was a part of his assets and which are used or relied upon to carry on his activities as a contractor. To say that a contract out of which the taxpayer may reasonably expect a profit, and certainly income, is not an asset and not therefore

property, is to lose sight of realities. In most instances the contract is the one thing that enables the taxpayer to carry on his activities, and to say that accruals of earnings thereunder are not property and subject to the tax imposed on the gross income of the business is not, in our opinion, a reasonable construction of the statute under consideration. Furthermore, this being a tax imposed on income, it is logically the first subject of the tax, and in no event can be held exempt from the lien on property which the statute imposes. This principle is recognized in Code, 11-13-16. We are therefore in no doubt on this proposition, and we think the contract under which the contractor operated is property within the meaning of the statute, and that the lien of the state attached hereto.

The statement we have made applies to all rights which may accrue to a taxpayer under his contract. With much more reason can it be applied to a case where, prior to the assertion of a lien, the earnings of the contractor have actually accrued. In the case before us the percentage of accrued earnings retained by the county court, at the date of the contractor's default, clearly exceeded the amount of the lien asserted by the state. It was a claim in favor of the contractor against the county court, which it had the right to assert upon the completion of its work; and one which was subject to any liens which might be asserted thereon as against the contractor, and subject to superior contract rights or the operation of the right to subrogation, and could be made the subject of an assignment by the contractor to a third party. The mere fact that liens or other superior rights to a fund may be asserted does not affect the status of the fund as property.

Tax statutes should be interpreted and applied in a manner fair to the taxpayer, and in an effort to reach equality and uniformity. Every person who engages in the business of contracting in this state is subject to a burden in the form of a tax on the gross income of his business. When he enters into a contract, he must do so in the light of that burden, and so long as each pays the tax imposed there is no discrimination and all stand upon an equal plane. It, therefore, becomes important that the

tax be imposed on all who engage in the business. When a surety guarantees the performance of a contract, it does so with full knowledge of the tax burden, and the priority of lien therefor which the state may assert, and when it is compelled to take over and complete a contractor's work, it steps into his shoes and assumes all the burdens attached to the contractor, whether in the form of taxes or otherwise. Every provision of its contract is subject to the superior right of the state to tax the same and enforce tax collections. To say that the failure of a contractor to complete his undertaking can be used to escape the payment of taxes due the state, simply because the surety may be liable to pay for material and labor, is nothing more than to supplant the state in its position as a paramount lienor, and set up a system under which all contractors who fail to complete their work may be released from taxation for the benefit of those who, for a consideration, undertake to guarantee the performance of work.

Appellee in its brief correctly states that this case turns upon the following point: "Whether or not the State of West Virginia, under the provisions of Code, Chapter 11, Article 13, Section 12, has a tax lien upon the fund of $1,592.00, which is paramount to the rights therein of unpaid laborers and materialmen on the Lewis County jail project, or of appellee as their subrogee." It is fair to assume that the position so taken is not intended as an abandonment of the other position relied on; but they are clearly inconsistent. If the fund in question is subject to the state's lien, and only a question of priority is involved, it necessarily follows that the fund is the property of the contractor. It is true that appellee paid in wages and for materials an amount in excess of any sum due the contractor from the county court on the completion of the work, and undoubtedly under the principle of subrogation would be entitled to be subrogated to the rights of laborers and materialmen for any amount so paid to them. This is held in *State* v. *Coda*, 103 W. Va. 676, 138 S. E. 324; *Capon Valley Bank* v. *State Road Commission*, 111 W. Va. 491, 163 S. E. 44. This being a public

building, coming within the terms of Code, 38-2-39, the laborers or materialmen could not acquire a lien upon the public structure, but they are protected under the bond required by said statute; and under the cases above cited, and general law, the surety on the bond executed thereunder would be entitled to be subrogated to their rights. The relief which the surety could thereby obtain cannot in our opinion take a higher status than the lien which a laborer or materialman could obtain were the structure under consideration not a public building. Therefore, we are confronted with the proposition of whether or not the lien of the state is superior to the lien or charge to which laborers and materialmen are entitled. This is not a new question with us. In *Moran* v. *Leccony Smokeless Coal Co.*, 122 W. Va. 405, 10 S. E. (2d) 578, 581, we upheld the right of the state to priority of lien. The principle therein decided applies to all liens or obligations in conflict with those of the state. In that case in discussing the language of the statute providing for priority of liens, we said: "We find it difficult to give any meaning to the provision 'all other liens' except the ordinary plain and simple meaning which the words used imply * * *"; and in the case before us we find no reason why we should attempt to give this statute a meaning different from that stated in the statute itself when it says that, "said lien shall have priority over all other liens and obligations except those due the United States." As to $1,100.00 of the state's claim the intent of the legislature to require payment out of income is manifest, Code, 11-13-16. If it be said that in the present case laborers and materialmen did not obtain a lien in the strict sense, the word "obligations" used in the statute would seem to cover any other claim which might be asserted against the state's lien. However much we may feel inclined to protect the laborer and his hire, or the person who furnishes material, both of whom enter into the work and help produce the income, still the method designed for their protection can at best do nothing more than create a lien or charge in their favor under conditions covered by the statute. Following the plain provisions of the statute and our former holdings, we now

hold that the lien of the state is necessarily superior to that of laborers or materialmen; and the surety in this case, while entitled to subrogation to the rights of laborers and materialmen as against the county court, takes that right subject to the priority given to the lien of the state under the statute. We do not think the cases of *State* v. *Coda, supra,* and *Capon Valley Bank* v. *State Commission, supra,* apply to the case at bar. Those cases plainly relate to situations where private creditors assert liens or assignments to the prejudice of those who are entitled to acquire liens, or to be paid under the statute. Clearly, no question of conflict between the lien of the state and that of other claimants to a fund, or any question of priority was involved. If this were a case in which some private creditor claimed under an assignment or some type of lien, these cases would clearly apply.

The decree of the Circuit Court of Lewis County is reversed and the cause remanded.

*Reversed and remanded.*