**BEN–TOM SUPPLY COMPANY, Inc.,**
**a corporation, Plaintiff,**

**v.**

**V. N. GREEN & COMPANY, Inc., a**
**corporation, et al., Defendants.**

**GREAT AMERICAN INSURANCE COM-**
**PANY, a corporation, Defendant and**
**Third-Party Plaintiff,**

**v.**

**W. Holmes SHAVER, Third-Party**
**Defendant.**

**W. Holmes SHAVER, Third-Party Plain-**
**tiff (Fourth-Party Plaintiff),**

**v.**

**John M. SLACK, Jr., and Victor N. Green,**
**Third-Party Defendants (Fourth-**
**Party Defendants).**

**Civ. A. No. 69–40.**

United States District Court,
S. D. West Virginia,
Charleston Division.

Aug. 18, 1971.

Spilman, Thomas, Battle & Klostermeyer, Charleston, W. Va., for Ben-Tom Supply Co., Inc.

Kay, Casto & Chaney, Charleston, W. Va., for V. N. Green & Co., Inc., and Central Asphalt Paving Co.

Steptoe & Johnson, Charleston, W. Va., for Great American Ins. Co.

Preiser, Green, Hunt & Wilson, Charleston, W. Va., for W. Holmes Shaver.

Kay, Casto & Chaney, Charleston, W. Va., for John M. Slack and Victor N. Green.

## MEMORANDUM DECISION

CHRISTIE, Chief Judge:

Ben-Tom Supply Company, Inc., (hereinafter referred to as "Ben-Tom") instituted this suit against V. N. Green & Company, Inc. (hereinafter referred to as "Green Company"), Central Asphalt Paving Co. (hereinafter referred to as "Central Asphalt") and Great American Insurance Company (hereinafter referred to as "Great Amercan"), claiming money due and owing from Green Company and Central Asphalt for materials supplied to them on certain named road construction projects and alleging that Great American, as surety on bonds required to be executed by Green Company and Central Asphalt on the named construction projects, was liable for the amounts owed by its principals on such projects.

Great American filed a Third-Party Complaint against W. Holmes Shaver al-

leging that Shaver and two other persons, as co-principals, had entered into indemnity agreements with Great American and that by such indemnity agreement, W. Holmes Shaver and his two co-principals had agreed to indemnify and reimburse Great American for any loss suffered by it as a consequence of Great American's becoming a surety on the bonds executed by Green Company and Central Asphalt. Thereafter Green Company and Central Asphalt filed answers to the Complaint admitting liability to the plaintiff for the amounts for which suit was brought. Great American, in its answer to the Complaint, neither admitted nor denied the allegations concerning the obligations of Green Company and Central Asphalt, but stated that it was without information sufficient to form a belief as to the several averments and called upon plaintiff for strict proof of such claims.

Subsequently, W. Holmes Shaver filed a Third-Party Complaint against John M. Slack, Jr. and Victor N. Green, co-principals with him on the indemnity agreements with Great American. In his Third-Party Complaint against Slack and Green, Shaver denied that he was liable under any indemnity agreement with Great American, but asserted that if he should be found so liable, then his two co-principals on the indemnity agreements would be liable to him for all or part of any amount which Shaver was found to owe to Great American. In his answer, filed subsequent to his Third-Party Complaint against Green and Slack, Shaver denied that Great American was liable to Ben-Tom and further denied that he was liable under any indemnity Agreement with Great American.

Thereafter, motions of Shaver to dismiss the complaint of Ben-Tom and to dismiss the Third-Party Complaint of Great American were denied by the Court. A motion for summary judgment made by the plaintiff, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, against Green Company, Central Asphalt and Great American was granted by this Court, with respect to the claims against Green Company and Central Asphalt on October 31, 1969, in the sum of $48,734.29, without interest. The motion, with reference to the claim against Great American, was taken under advisement by the Court, and by stipulation of counsel for all parties involved it was submitted to the Court for a decision based upon the depositions, pleadings, interrogatories and answers, and affidavits. The question of plaintiff's right to summary judgment with respect to its claim against Great American is thus before this Court for decision, and having examined the record as submitted by stipulation of the parties, the Court finds that no genuine issues of material fact are presented and that disposition on motion for summary judgment is appropriate. The Court finds and bases its decision on the following facts:

Between 1964 and 1967, Green Company and Central Asphalt, as joint venturers, entered into a number of contracts with the State of West Virginia, such contracts contemplating the construction of a number of bridges and roads by the joint venturers within the state. Three of these contracts, out of which the present controversy arises, were: (1) a contract dated September 13, 1965, whereby the joint venturers agreed to build and complete certain bridges and other work in Harrison County, West Virginia, designated as Project No. I–79 3(5) 118; (2) a contract dated January 27, 1966, whereby the joint venturers agreed to build and complete a road and other work in Jackson and Wood Counties, West Virginia, designated as Project No. I–77 3(55) 156; and (3) a contract dated September 28, 1966, whereby the joint venturers agreed to build and complete certain roads and bridges in Harrison County, West Virginia, known as Project No. APD–282(35). On each of the three projects, Green Company and Central Asphalt, as principals, and Great American, as surety, executed a Contract Bond guaranteeing that the contractors Green

Company and Central Asphalt would comply with the terms of their contract with the State of West Virginia and would pay all bills for labor and materials contracted for and used by them on the particular project.

*Project No. I–79 3(5) 118*

Project No. I–79 3(5) 118, awarded by the State of West Virginia to Green Company and Central Asphalt as joint venturers, on September 13, 1965, involved the construction of roads and bridges in Harrison County on a portion of Interstate 79 from McWhorter to the Lost Creek Road. As part of the contract, the State of West Virginia agreed that, based upon an estimate of the work completed and of the materials used, it would pay Green Company and Central Asphalt, on a monthly basis, ninety-five percent of the value of such labor and materials. The additional five percent was by the terms of the contract to be retained by the state until completion of the contract and acceptance of the work. Though not specifically provided for in the contract, the five percent retainage could be reduced to two percent at the request of the contractor, and with the concurrence of the surety, at a time when the work on the contract was "substantially" completed.

On this project, Green Company and Central Asphalt, by letter dated December 28, 1967, requested a reduction in the retainage to two percent. This letter was accompanied by a letter from Great American, dated December 26, 1967, in which Great American concurred in the request for the reduction of the retainage. Though the record is not clear on this matter, a check representing the difference between the five percent retainage and two percent retainage was apparently presented to Green Company and Central Asphalt shortly after the receipt of the two letters in December of 1967.

Upon completion of the project, the contractor, in conjunction with the submission of the final estimate, is required to execute an affidavit affirming that the work on the project has been completed and that all money due for wages and for materials furnished has been paid. Victor N. Green executed such an affidavit for Central Asphalt and Green Company on December 11, 1968. According to the records of the State Road Commission, Project No. I–79 3(5) 118 was officially completed on June 15, 1968. On December 18, 1968, a final check in the amount of $115,245.85 was paid to Green Company and Central Asphalt. This amount represented a retainage of $80,932.68, the excess apparently representing money owing for work done on which no previous payments had been made. With respect to this final payment, notification was not required to be given to the surety nor was the surety required to agree to such payment.

At the time of the execution of the affidavit by Victor N. Green, and on the date of the final payment on Project No. I–79 3(5) 118, the contractors, in fact, had not paid for all materials furnished on that project; to the contrary, the contractors owed substantial amounts of money to Ben-Tom.[1]

Subsequent to the time the retainage on this project was reduced from five percent to two percent, but prior to the time final payment was made thereon, Ben-Tom, by letter dated May 28, 1968, informed the State Road Commission that it had unpaid claims against Green Company and Central Asphalt for materials supplied on that project in the amount of $26,756.83. Carbon copies of this letter were also sent to Green Company and Great American.

The State Road Commission, upon receiving notice from a materialman or supplier of labor on a project that money is due and owing from the general

---

[1]. Though a slight disparity exists between the amounts sued for by plaintiff and the amounts shown as being owed to it on the books of Green Company, this difference has been reconciled by stipulation of the parties in favor of the amounts shown in the Complaint.

contractor, acknowledges receipt of the claim letter and refers it to the surety on the contractor's bond. The material-man or supplier of labor, however, is informed that, although the state recognizes the claim, it does not enter into any collection procedure with the general contractor for monies due. It is the position of the State Road Commission that, when a job is finalized and the surety has made no effort to stop the final payment, the necessary papers are then ready to be processed for final payment.

### Project No. I–77 3(55) 156

Project No. I–77 3(55) 156, awarded by the State of West Virginia to Green Company and Central Asphalt as joint venturers on January 27, 1966, involved the construction of roads and bridges in Wood and Jackson Counties on a portion of Interstate 77. This contract, as in the case of each of the contracts entered into between the State of West Virginia and the joint venturers, provided for payments and for a stipulated retainage as set forth above with respect to the contract on Project No. I–79 3(5) 118.

On Project No. I–77 3(55) 156, the percentage was reduced from five percent to two percent upon request of Green Company and Central Asphalt, such request being contained in a letter dated August 23, 1968, from Green Company to the State Road Commissioner. By letter dated September 16, 1968, the surety, Great American, concurred in this reduction of percentage retention. Prior to the date of the reduction, Ben-Tom, by letter dated May 28, 1968, had notified the State Road Commission that it had a claim against Green Company and Central Asphalt for materials supplied on Project No. I–77 3(55) 156 in the amount of $6,052.99. Copies of this letter were also sent by Ben-Tom to Great American and to Green Company.

Work on this project was completed by the contractors on January 24, 1969, how-ever, as yet final payment has not been made nor has the affidavit been filed asserting that the materialmen and suppliers of labor have been paid. The tentative final estimates by the State Road Commission show an amount due the contractors of $134,842.14. However, Green Company and Central Asphalt, by letter to the State Road Commission dated February 25, 1969, have assigned to Great American all claims for money owed them on this project.

### Project No. APD–282(35)

Project No. APD–282(35), awarded by the State of West Virginia to Green Company and Central Asphalt as joint venturers, on September 28, 1966, involved the construction of roads and bridges in Harrison County, from Bristol to Wolf Summit.

Though the contract for this project contained the same provisions for payment and for retainage of five percent of the monies owed, there has been neither a reduction in the retainage nor a final payment on the project. To the contrary, Green Company and Central Asphalt were unable to complete the work on this project, and as a consequence, by an agreement dated March 28, 1969, the two companies assigned the work on the contract to J. F. Allen Company. J. F. Allen Company agreed to complete the work on the contract for the amount of money remaining to be paid. At the time of the assignment, approximately sixty-nine percent of the project had been completed and, according to the records of the State Road Commission, $7,472.22 was owed to Green Company and Central Asphalt on estimates previously submitted, and $153,324.55, representing the five percent retention, was being held by the state.[2]

With regard to the notice of claims of materialmen on this project, the records of the State Road Commission indicate that, by letter dated May 28, 1968, Ben-

---

2. According to the records of Ellis and Ellis, Certified Public Accountants for Green Company, the retainage on the project amounted to $225,293.73, however, it is not necessary for the purpose of this memorandum decision to determine which of the two figures is correct.

Tom notified the State Road Commission that it had a claim against Green Company and Central Asphalt in the amount of $15,924.47 for materials supplied to Project No. APD–282(35). Copies of this claim letter were also sent by Ben-Tom to Green Company and Great American.

*Sufficiency of Evidence to Establish Claims of Ben-Tom*

It is the contention of W. Holmes Shaver that plaintiff has failed to establish by competent evidence that the materials upon which its claims for money owed are based went into the projects covered by the Contract Bonds upon which the obligation of Great American as surety is predicated. Although Shaver does not deny that the amounts claimed in the Complaint are owed by Green Company and Central Asphalt, he asserts that the evidence concerning the materials supplied to the three projects consists entirely of hearsay statements and, accordingly, fails to establish the claims of the plaintiff.

Ray C. Miller, a Vice-President of Ben-Tom, testified by way of an affidavit that the materials sued for had been purchased by Green Company and Central Asphalt from Ben-Tom and had been delivered by Ben-Tom to the three construction projects involved in the suit. Mr. Miller asserted in his affidavit that the statements made therein were based upon his personal knowledge.

In contrast to the position of Shaver with respect to the motion for summary judgment, Green Company and Central Asphalt have admitted in their answer the allegations in plaintiff's complaint, that plaintiff sold and delivered materials to the joint venturers on the three projects, that the joint venturers accepted delivery of the materials and that such materials were installed on the particular project. It is obvious that, as between plaintiff and the two contractors, there is no dispute with reference to the delivery and installation of the materials on the three construction projects. The question which then arises is what effect, if any, do these admissions have on the liability of the surety on the bond of the two contractors?

It is, of course, settled beyond dispute that statements in a party's pleading may constitute an admission as to that party. Additionally, such admissions are competent evidence against a co-party having a joint interest in the matter upon which the admission was made with the party making such admissions. Dickinson's Executors v. Clark, 5 W.Va. 280 (1872). See also, Hudkins v. Crim, 64 W.Va. 255, 61 S.E. 166 (1908). The relationship of principal and surety involves such a joint interest and, as in the present case, admissions by a principal are admissible in evidence against his surety. Star Grocery Co. v. Bradford, 70 W.Va. 496, 74 S.E. 509 (1912). See also 9 Wigmore, Evidence, Section 1077 (3rd Ed., 1940). Thus it would appear that, contrary to the assertions of Shaver, competent evidence in the form of judicial admissions establishes that the items upon which plaintiff's complaint is based were delivered to and utilized in the three construction projects.

These admissions are supplemented by the affidavits of Ray C. Miller, Vice-President of Ben-Tom. According to his uncontradicted statement, Mr. Miller had personal knowledge of the delivery to and acceptance of the materials on the three projects. He also listed in his affidavit the items delivered to the three projects by Ben-Tom, as well as the amount owing for such materials.

It is not to be supposed, of course, that this evidence in these admissions is not subject to dispute, however, Shaver, in opposing the motion for summary judgment, has failed to present a single evidentiary fact which is in any way in conflict with the evidence and the admissions utilized by plaintiff to establish its claim. Thus, it has not been shown anywhere in the evidence that materials supplied to one of the three projects were actually used elsewhere. Although this issue was raised repeatedly in the course

of the depositions, Shaver failed to uncover a single instance in which items ordered for a particular project were actually used elsewhere. Shaver also asserts that the materials upon which plaintiff's claims were based were not shown to be of the type covered by the surety bonds, however, the evidence and admissions established that the materials supplied were "installed" in the projects. Nowhere in the record is there any evidence that the materials were anything other than those contemplated by the Contract Bonds. The bonds specify simply that they are conditioned upon payment for "materials furnished" the contractor. Plaintiff has established that the supplies were so "furnished" and there is no evidence in the record to the contrary.

*Monies Held by the State of West Virginia*

Shaver asserts that the State of West Virginia holds sums of money, as percentage retention, in excess of the amounts claimed by plaintiff and that these funds must be exhausted by the plaintiff before attempting to collect its accounts from the surety. Initially, it should be noted that the Contract Bonds contain no such requirements, nor do the provisions of the West Virginia Code, requiring the execution of such bonds, make any mention of a requirement that unpaid materialmen give notice to or make claim against funds retained by the State prior to asserting their claims against either the principal or the surety on the bond. W.Va.Code 17–4–20. Thus, in order for this Court to adopt Shaver's view, it would be necessary to find an implied condition in the contractor's bond to the effect that materialmen would be required to make claim against the State for funds held by it prior to bringing suit against the surety. It is not the function of this Court to rewrite the terms of the bond, and, as stated by the Court in Leckie v. Bray, 91 W.Va. 456, 459, 113 S.E. 746 (1922):

"  .   .   . (T)here is no authority for any addition to the terms of a written instrument, or transposition or modification thereof, unless it has foundation in the written words of the paper or is a reasonable and fair implication arising out of the words or some provision or provisions thereof. .   ..   . 'the court should take great care not to make the contract speak where it was intentionally silent; above all, that they do not make it speak entirely contrary to what, as may be gathered from the whole terms and tenor of the contract, was the intention of the parties.' "

As a practical matter, of course, the State of West Virginia may also have claims against the funds held by it, and the possibility of a recovery by plaintiff from such funds would depend upon numerous contingencies over which it had no control.

Under such circumstances, and in view of the plain language in the Contract Bonds, this Court will not imply any condition which would require plaintiff to seek recovery from the funds held by the State prior to asserting its claims against Great American. It should further be noted that a surety paying claims of materialmen and laborers is subrogated to their rights with respect to the contractor. Capon Valley Bank v. State Road Commission, 111 W.Va. 491, 163 S.E. 44 (1932). Thus, Great American would be subrogated to any rights which the materialmen have against Green Company and Central Asphalt and, if the funds held by the State are ultimately found to be owed to the contractors, Great American could assert its subrogation claim against such funds.

*Payment of Monies to Contractors by State*

Finally, Shaver contends that the payment by the State of West Virginia of $115,245.85 on Project No. I–79 3(5) 118 to Green Company and Central Asphalt without the knowledge or consent of Great American releases Great American from its obligations under the Contract Bonds. Shaver cities a number of West Virginia cases to sustain this proposi-

tion, however, the Court does not find these authorities persuasive in the context of this case. In each of the cases cited by Shaver there was involved an unauthorized reduction in the percentage retention or an unauthorized alteration of the contract between the owner and the contractor. In the instant case, the only reductions in the retention funds were made with the consent of Great American. The payment complained of constituted a final payment upon completion of the project and the contract did not contain any provision requiring the State to give notice to or obtain the consent of the contractor's surety prior to final payment.

The problem arising from this payment resulted not from any dereliction of duty on the part of the State Road Commission but from the fact that V. N. Green filed an affidavit, which appears to have been false, asserting that all claims for labor and material had been paid. Upon the filing of this affidavit, the State was authorized to make final payment. The State was not required by its contract or by any other writing brought to the attention of this Court to notify or seek the approval of Great American.

■ It should be noted that the contract between Green Company and Central Asphalt and Great American, whereby Great American agreed to become surety for the two companies, provided for the assignment to Great American of "any and all percentages retained on account of the contract" and "any and all sums that may be due under said contract" between the joint venturers and the State of West Virginia in the event of "a default in discharging other indebtedness or liability when due." The record in this case establishes that Green Company and Central Asphalt were, in fact, failing to discharge their liabilities in a number of instances prior to the time of the final payment on Project No. I–79 3(5) 118. The record also indicates that Great American was not unaware of this fact. Great American thus had the option to require an assignment from Green Company and Central Asphalt prior to the time of the final payment complained of by Shaver. This provided the surety with adequate protection against the possibility of a dissipation of the funds payable to the joint venturers. Accordingly, in the absence of a requirement in the contract between the State of West Virginia and Green Company and Central Asphalt requiring notice or consent in the case of final payment upon completion of the project, this Court finds that the payment of $115,245.85 on Project No. I–79 3(5) 118 did not release the surety, either in whole or in part, from its liability under the Contract Bonds.

*Conclusion*

While recognizing that, upon motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and the moving party has the burden of showing that there is no genuine issue of material fact, nevertheless, under the circumstances of this case plaintiff has sustained that burden. The evidence establishes without dispute that the supplies were delivered to the contractors on the three projects, that those supplies were accepted by the contractors and were installed by them on the projects to which they were delivered. The record is devoid of any evidence which would indicate that the supplies were other than those contemplated by the Contract Bonds. Nor, as stated above, has Shaver put forward any principle of substantive law which would deprive plaintiff of his right to recover from the surety on the bonds. Accordingly, the Court finds that plaintiff is entitled to summary judgment with respect to its motion against Great American. The Court further finds that there is no just reason for delaying entry of final judgment against Great American and that plaintiff is entitled to entry of final judgment against Great American in accordance with the provisions of Rule 54(b) of the Federal Rules of Civil Procedure.